UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

    Plaintiff,

v.                                Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

    Defendants.
_____/

## AFFIDAVIT OF JOSHUA HARRIS

STATE OF FLORIDA
COUNTY OF UNION

    BEFORE ME, the undersigned authority, personally appeared **JOSHUA HARRIS**, who first after being duly sworn says:

    1.    My name is Joshua Harris and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

    2.    I am a Correctional Officer employed by the Florida Department of Corrections, and currently work at Union Correctional Institution.

    3.    On October 14, 2008, I was assigned during administrative shift, which at that time ran from 7 a.m. to 4 p.m., to work at O-dorm at Union CI. That morning, I was assisting in pulling inmates from their cells to be escorted to Mental Health Group and other callouts. At approximately 7:40 a.m., Officer Christie and I had just returned to the second floor from the downstairs of O-dorm. Officers Kelly and Nash approached with inmate York and while I don't recall the details, Officer Christie and I assumed responsibility for the escort. Before Officer Christie and I could even take over the escort, inmate York began yelling at us. I no longer independently recall what York was yelling; however, I believe it is documented in some of the incident reports. Shortly after York began yelling, he suddenly lunged and attempted to head butt me. Officer Christie quickly pinned York against the upstairs conference room door and ordered him to cease his assaultive behavior. York refused and continued to shout and struggle. I then assisted Officer Christie in holding York against the door. York continued to refuse orders to cease his resistance and again began twisting his upper body in an attempt to break our holds.

    4.    York then attempted to head butt me again. Officer Christie and I forced York to the quarterdeck floor, face down, in order to prevent further assault. Once York became compliant and was assisted to his feet, he again started resisting and twisting his body and began


DEFENDANT'S EXHIBIT E

shouting. Officer Christie and I again forced York face down on the floor. Once York ceased his disruptive behavior, Officer Christie and I assisted York to his feet again.

5. York was directed to start down the steps. York started down the stairwell and suddenly, York snatched away from us and fell down the stairs, rolling to a stop on the top stairwell landing. York's snatching away also caused me to lose my balance on the stairs. I missed a few steps but was able to catch myself on the opposite wall with both of my arms extended out in front of me. By the time I regained my balance, Officer Christie had reached the first landing. Inmate York was positioned against the wall opposite the first set of stairs down to the landing and his head and part of his upper body were slightly down the next flight of stairs to the second landing below. Officer Christie and I then went partway down the second set of stairs and brought York to his feet on the first landing. York then said, "Ya'll are gonna have to kill me," and again tried to break free by twisting his upper body. Officer Christie and I forced York face down on the stairwell landing in order to prevent further assault. Once York became compliant, we once again assisted York to his feet and Officer Christie and I escorted him to the bottom of the stairs. Officer Christie released his hold and I then escorted York to the O-Dorm first-floor holding cell, placed York on the holding cell bench, released my hold and exited the holding cell. No other force was used. The detail about losing my balance on the stairs is not in my incident report. At the time I wrote the report, the fact that I also almost fell down to the landing did not seem important enough to be included in my report as I was more focused on documenting York's actions, the use of force, and our struggle to get him to a secure location.

6. I have not retaliated against or threatened York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick or punch York, nor did I hit him with my radio. I did not observe any other staff hit, punch, kick or otherwise assault York, nor did I observe anyone force him inside the conference room. If I had observed such actions I would have reported them to the appropriate authorities. My actions in grasping York, holding him against the conference room door, and forcing him face down on the floor were necessary to prevent him from attempting to head butt me again and to end his disruptive and aggressive actions against me, Officer Christie, and any other staff or inmates who may have been present. I used only the minimal amount of force necessary to end York's behavior.

7. York presented a serious security threat when he attempted to head butt me and refused all orders to cease his assaultive behavior. In my experience in corrections, even inmates who are restrained at the hands can inflict harm by head or body strikes, kicking or grabbing with their hands. Leg irons also do not prevent an inmate from kicking or striking an officer. It was necessary to force York to the floor to gain control of the situation, to prevent further assault, and to maintain the safety and security of the unit. Taking an inmate to the floor face down, rather than on his back or side, allows the officer to have greater control over the inmate and also minimizes the risk of further assault by the inmate. On his back, an inmate can still strike, bite, spit on or otherwise assault the officers involved in a use of force.

8. There was no need for additional officers to be involved in the use of force. The stairwell where this incident occurred is approximately 3½ to 4 feet wide. It is closed off on one side and there is a railing open that looks over the first floor on the left side. There is just enough

room for one officer to go down the stairs alongside the inmate and any other officers would have to be in front or behind the inmate. Due to the size of the area where the use of force occurred, having additional officers present could create a serious risk of significant injury, should the inmate attempt to throw an officer over the railing.

9. In addition, during this incident it was discovered that York had an unknown slippery substance on his skin, which made it very difficult for Officer Christie and I to maintain our hold on him. A cup of butter was later found in York's cell. In my experience, it has become common over the last several years for inmates to use butter, ointment, or other oily substances to try to slip out of handcuffs or to easily snatch away from an officer's grasp. This presents a security threat and may be indicative of the inmate planning to get away from an officer's escort, where he can then pose a threat to other inmates or staff.

10. Since this incident, on December 14, 2009, inmate York successfully manipulated his left hand out of hand restraints, while cuffed in the back, and then manipulated his right hand to the front with the right handcuff, waist chain and black box still secured. York then stabbed inmate Willie Lester (DC# S05004) three times in the chest. (Attachment 1) Any time it is evident that an inmate may be planning to manipulate his restraints it presents a serious security threat to the institution, to staff and to other inmates. Force is necessary to bring the inmate into compliance and to then move the inmate to a secure location.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOSHUA HARRIS
Affiant

Sworn to and subscribed before me this 17 day of August 2011.

_____
(Signature of Notary Public, State of Florida)

_____
Print, type of stamp commissioned name of notary public

Personally known ✓ or Produced identification ___ (type of identification _____)

LINDA L. CLANCE
MY COMMISSION # EE 068551
EXPIRES: February 22, 2015
Bonded Thru Budget Notary Services

3

```
                    FLORIDA DEPARTMENT OF CORRECTIONS              01/20/2010
ISS0152 (03)               DISCIPLINARY REPORT                     PAGE  1
                           LOG # 213-092538
--------------------------------------------------------------------------------
DC#: B02769   INMATE NAME: YORK, HERBERT D.              INFRACTION
VIOLATION CODE: 0110   TITLE: AGVT BTRY/ATT/INMATE       DATE: 12/14/2009
FACILITY CODE: 213     NAME: UNION C.I.                  TIME: 14:15
--------------------------------------------------------------------------------
I.   STATEMENT OF FACTS:
        AT APPROXIMATELY 1415 HOURS, MONDAY, DECEMBER 14, 2009,
     WHILE ASSIGNED AS THE U-DORM ADMINISTRATIVE OFFICER, I WAS
     SUPERVISING THE AFTERNOON INDIVIDUAL SESSIONS ON QUAD-FOUR,
     WHEN TWO INMATES, IDENTIFIED AS INMATE YORK, HERBERT #B02769
     HOUSED IN CELL U4-209 AND INMATE LESTER, WILLIE #S05004
     HOUSED IN CELL U4-112 WERE INVOLVED IN A PHYSICAL
     ALTERCATION.  I OBSERVED INMATE YORK STRIKING INMATE LESTER
     WITH A CLOSED FIST ON THE UPPER TORSO AND HEAD AREA. OFFICER
     CLARENCE RUISE, OFFICER CLINTON HODGES, AND I ENTERED THE
     GROUP ROOM AND GAVE BOTH INMATES SEVERAL ORDERS TO STOP
     THEIR ACTIONS, TO WHICH THEY REFUSED.  INMATE YORK
     CONTINUED STRIKING INMATE LESTER WITH CLOSED FIST.  I
     ORDERED INMATE YORK TO STOP, TO NO AVAIL.  AT THIS TIME IT
     BECAME NECESSARY TO USE THE MINIMUM AMOUNT OF FORCE ON
     INMATE YORK TO BRING HIM INTO COMPLIANCE WITH A LAWFUL ORDER
     AND TO STOP FURTHER ASSAULT ON INMATE LESTER.  IT SHOULD BE
     NOTED THAT INMATE YORK HAD MANIPULATED HIS LEFT HAND OUT OFF
     THE HAND RESTRAINTS AND MANIPULATED HIS RIGHT HANDCUFFED
     HAND TO THE FRONT WITH THE WAIST CHAIN AND BLACK BOX
     STILL SECURED.  DURING LESTER'S POST ASSAULT PHYSICAL IT WAS
     DISCOVERED THAT INMATE YORK HAD STABBED HIM SEVERAL TIMES:
     (2) TWO SMALL PUNCTURE WOUNDS TO THE RIGHT UPPER QUADRANT
     AND (1) ONE PUNCTURE WOND TOTHE LEFT CHEST WALL.  INMATE
     YORK IS BEING CHARGED WITH DISCIPLINARY INFRACTION (1-10)
     AGGRAVATED BATTERY ON AN INMATE PER RULES OF PROHIBITED
     CONDUCT.  THE WEAPON WAS LATER FOUND AND IT WAS RECOVERED,
     PHOTOGRAPH, AND PLACED IN THE IG'S OFFICE EVIDENCE LOCKER.

REPORT WRITTEN: 12/15/2009, AT 08:50   OFFICER: GMA17 - GLEMAN, M. A.
ASSIGNED AND APPROVED BY: AJF05 - ALLEN, JOSEPH F.
--------------------------------------------------------------------------------
II.  INVESTIGATION:
     WITNESSES:
        CO  C. RUISE
        CO  C. HODGES
        INMATE LESTER, WILLIE #205004
        INMATE OFFERED STAFF ASSISTANCE: DECLINED

  INVESTIGATION BEGUN: 12/15/2009, AT 10:00   OFFICER: CBJ21 - CALLOWAY, B. J.
  INVESTIGATION ENDED: 01/08/2010, AT 13:55
--------------------------------------------------------------------------------
III. INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: 01/08/2010, AT: 13:55

                      DELIVERED BY : CBJ21 - CALLOWAY, B. J.
--------------------------------------------------------------------------------
IV.  DESIGNATING AUTHORITY REVIEW   LEVEL: MAJOR   DATE: 01/14/2010
        DELAY DUE TO INMATE BEING ON SHOS AND MEDICAL PORM
```

Att. 1

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          01/20/2010
ISO152 (03)              DISCIPLINARY REPORT                   PAGE   2
                         LOG # 213-092538
-------------------------------------------------------------------------
DC#: B02769   INMATE NAME: YORK, HERBERT D.            INFRACTION
VIOLATION CODE: 0110   TITLE: AGVT BTRY/ATT/INMATE     DATE: 12/14/2009
FACILITY CODE: 213    NAME: UNION C.I.                 TIME: 14:15
-------------------------------------------------------------------------

                        OFFICER: WRE12 - WOODALL, RONNIE
-------------------------------------------------------------------------
V.      TEAM   FINDINGS AND ACTION   DATE: 01/20/2010, AT: 06:50
        INMATE OFFERED STAFF ASSISTANCE: DECLINED
        INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
        INMATE PRESENT: YES
    POSTPONEMENT:
    BASIS FOR DECISION:
        SUBJECT WAS FOUND GUILTY OF CHARGE 1-10 BASED ON THE
        EYEWITNESS TESTIMONY OF OFFICER GLEMAN AS STATED IN SECTION
        1 THAT HE OBSERVED INMATE YORK, HERBERT #B02769 STRIKING
        INMATE LESTER, WILLIE #S05004 WITH A CLOSED FIST ON THE
        UPPER TORSO AND HEAD AREA.  DURING INMATE LESTER'S POST
        ASSAULT PHYSICAL, IT WAS DISCOVERED THAT INMATE YORK HAD
        STABBED INMATE LESTER TWICE IN THE RIGHT UPPER QUADRANT OF
        HIS CHEST AND ONCE TO THE LEFT CHEST WALL.  WEAPON WAS FOUND
        AND RECOVERED; PHOTO ATTACHED.  WEAPON DISPOSED OF BY
        SECURITY IN ACCORDANCE WITH DEPARTMENT POLICY.  ALL
        ATTACHMENTS WERE READ AND CONSIDERED.
    HEARING DELAY COMMENTS:
        DUE TO OBTAINING MENTAL HEALTH MEMORANDUM.

    ACTIONS TAKEN:
    LOSS OF GAIN TIME:        0000; PROBATION DAYS SET: 000
    DISCIPLINARY CONFINEMENT:  60; PROBATION DAYS SET:   0 CONSECUTIVE
                              0000                      000

    RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: Y

    TEAM CHAIRMAN:  BSK75 - BOWEN, S. K.
    TEAM MEMBERS:   CLT02 - CARRION, L. T.             -
-------------------------------------------------------------------------
VI. REVIEW AND FINAL ACTION: NO FINAL ACTION
        WARDEN:             -                   DATE: 00/00/0000
-------------------------------------------------------------------------
VII. APPEAL PROCESS DISPOSITION: NO INSTITUTIONAL ACTION
        WARDEN:             -                   DATE: 00/00/0000
-------------------------------------------------------------------------

    INFORMATIONAL NOTES:
        MAXIMUM GAIN TIME DAYS AVAILABLE TO BE TAKEN:  360 DAYS
-------------------------------------------------------------------------
DC4-804
```