FILED

2012 FEB -2 PM 12: 29

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Herbert Demond York, DC#B02769,
Plaintiff.

v. Case No: #3:10-CV-920-J-32TEM

Felicia D. Chestnut, *et. al*
Defendants
_______________________/

**"Plaintiff's Response To Defendants Motion To Dismiss or In The Alternative Motion For Summary Judgment"**

**COMES NOW**, the Plaintiff, Herbert D. York, by himself in response to Defendants motion to dismiss in or the alternative motion for Summary Judgment. Plaintiff submits the following:

**1).** Defendant's F. Chestnut; J. R. Harris; J. Nash; J. Kelly; P. H. Christie; seeks Summary Judgment on the following grounds:

**a)** Verbal abuse and threats are not cognizable under *§1983.*

**b)** Defendants are entitled to Eleventh Amendment Immunity.

**c)** Plaintiff fails to demonstrate a need for Injunctive Relief.

**d)** Plaintiff does not raise allegations against any named Defendants regarding his medical care claim or his claim that his property was taken out of his cell.

**e)** Plaintiff fails to establish a retaliation claim.

**f)** Plaintiff fails to establish an Eighth **Amendment** violation.

**g)** Defendants are entitled to Summary Judgment.

**h)** Plaintiff fails to demonstrate a need for Court-Appointed counsel.

**"Plaintiff's Response to Defendants Motion to Dismiss or In The Alternative Motion For Summary Judgment"**

## MEMORANDUM OF LAW

**A-1#** **Verbal abuse and threats are cognizable under § 1983:**

The verbal abuse and threats by staff/defendants towards Plaintiff were directly related to the physical abuse by staff. See: case cite, **Thaddeus-X v. Blatter,** *175 F. 3d 378*. Retaliation of harassment and physical threats were likely to deter a person from exercising their rights where said verbal abuse and threats immediately preceded the physical abuse, and immediately ensued after the physical abuse was terminated. Contrary to Defendants insinuations that said verbal abuse and threats are within and of themselves unrelated to the physical abuse; The testimony of Plaintiff will show the direct relation to said physical abuse. Where the preceding threat was enmeshed in the cause of action that brought about the physical abuse, and threat thereafter physical abuse was purposely done to deter Plaintiff from filing subsequent inmate grievances and this civil suit at bar. Furthermore, the totality of circumstance test includes all facts surrounding said physical abuse that gives rise to Plaintiff's claims. See case

cite: **Cummings v. Harrison,** *695 F. Supp. 2d 1263,* shows genuine of material fact in dispute when officers verbal abuse and physical assault were used to deter Plaintiff. Also see: **Wilson v. Silcox,** *151 F. Supp. 2d 1345.*

**B-2# Defendants are not entitled to Eleventh Amendment Immunity:**

Defendants well schooled in law/color of law, know that Plaintiff sued Defendants in their Individual Capacities for Monetary Damages and Official Capacities for an Injunction. However, Defendants intentionally misconstrued Plaintiff's claims as if Plaintiff seeks monetary damages from Defendant's in their Official Capacities which is "not" the case. See Amend. Complaint, Exhibit E. Thus, this issue by Defendant's that Defendants are immune from monetary damages in their Official Capacities per 11th Amendment is frivolous and SHOULD BE STRICKEN. See: **Harlow v. Fitzgerald,** *457 U. S. 800 (1982).*

**C-3# Plaintiff shows the need for Injunctive Relief.**

Plaintiff meets the (4) elements for a permanent injunction to install stationary video recording cameras at designated areas which are blind spots for unprecident amount of staff abuses on inmates to date. Said injunction is directed to the highest echelon in the suit at hand (i.e.) Capt. Chestnut and her supervisors has authority to institute said video cameras: See the accompanying motion for permanent injunctive attached hereto/accompanied herewith. See Exhibit B.

**D-4#  Plaintiff does raise allegations against named defendants. See Med. Care Claims:**

In Plaintiff's §1983 complaint, statement of facts #14, Plaintiff stated submitting sick-call request forms regarding said physical abuse by staff to no avail if it should be noted that said officials and their associated that physically abused Plaintiff also refused to pull Plaintiff from his housing cell #01-202 and escort Plaintiff to the Medical treatment room for his sick-call assessment. Plaintiff would have, Defendant Christie approached his cell #01-202 and ask Plaintiff would he like to go to his call-out to medical? Plaintiff then stated "yes" at said time. Defendant Christie, stated "York," if you come out we're going to jump on you again, therefore, placing Plaintiff's life in danger and his call-out to medical was denied. See: Exhibit A #14-15.

**E-5#  Plaintiff does establish a retaliation claim:**

Plaintiff meets the (3) element requisite for a retaliation claim.

**1)** Plaintiff has the right to file grievances with the F.D.O.C. and civil suits with the court, U.S. Const. 1st and 14th Amendments.

**2)** Defendants impeded said right via the aforesaid verbal abuse and threats with bogus DR's in attempt to discourage and deter Plaintiff from proceeding on the endeavors for justice via grievance exhaustion and civil suit. Defendants

additionally used physical abuse/force to deter Plaintiff endeavors for justice as stated. Further, defendants confiscated and discarded Plaintiff's legal materials, including but not limited to **I/M** once again, attempting to further discourage and frustrate Plaintiff's access to courts.

**3)** The casual connection between Plaintiff's 1st Amend. Right and said retaliation is supported by several re-occurring incidents which includes but is not limited to defendants/

**a)** Staff's verbal abuse and threats to Plaintiff that said physical abuse were the result of Plaintiff filing grievances and civil suit; where said verbal abuse and threats were witnessed by Plaintiff. See supporting Affidavit. Exhibit A.

**b)** Oneor more of the Defendants in the suit at bar had assaulted Plaintiff in previous suit. See case: 3:08-CV-940-TJC-JRK. Exhibit C. See case **Cummings v. Harrison,** *695, F. Supp. 2d 1263.* See case: **Thaddeus-X v. Blatter,** *175 F. 3d 378.* Retaliation of harassment and physical threats were likely to deter a person from exercising their rights. See: ***Farrow v. West,*** *320 F. 3d 1235, 1248 (11th Cir. 2003).*

**F-6#** **Plaintiff shows/establishes a clear Eighth Amendment violation:**

Defendants viscously and brutally assaulted Plaintiff, using malicious and sadistic physical force without need or provocation by punching, kicking and

stamping their prison issued radios/walkie-talkies into Plaintiff's face without Plaintiff posing a threat to any of the defendants during, on, or around the use of force at bar. Defendants wanton infliction of pain on Plaintiff is in clear violation of Plaintiff's 8th and 14th Amendment rights by use of cruel and unusual punishment. See case: **Hudson v. McMillan,** *503 U.S. 1, 5 (1992)* (citing) **Whitely,** *473 U. S. at 320)*. Under the cruel and unusual punishment standard, Plaintiff shows that he suffered sufficiently serious deprivation injuries. Plaintiff, however, alleges that the defendants "Maliciously and Sadistically" used cruel and unusual punishment against him intentionally to inflict serious physical harm, injury, and pain on Plaintiff. See (D.O.C. 28 at 8).Plaintiff clearly established wrong doing by defendants in his complaint when Plaintiff stated that defendant's placed Plaintiff in full restraints (waist chains, handcuffs, black box, and leg irons) and escorted Plaintiff off the wing. Once Plaintiff exited the wing, defendant Christie grabbed Plaintiff by his shirt collar then shoved Plaintiff into an unlit room where there is no video surveillance , a "blind spot," and started assaulting Plaintiff. While defendant Christie shoved Plaintiff into the unlit "blind spot" the rest of the named defendants immediately followed in and started assaulting Plaintiff resulting, in Plaintiff receiving major injuries including superficial scratches and lacerations with swelling to nose, lip, face, and two (2) lacerations requiring sutures to the left eyebrow and one to the right crown. Plaintiff also

received hematoma on both the forehead and back of head (Plaintiff received (3) sutures on each cut). Chief Health Officer, Dr. J. Aviles, prescribed 250 mg. Of Keflex, an antibiotic, and Tylenol for 10 days to Plaintiff for his injuries. Plaintiff's injuries which resulted from the defendants assault clearly amounts to more than *de minor* injuries. Defendants used excessive force on Plaintiff absent penological justification. See: **Skritich v. Thornton,** *280 F. 3d 1295, 1300-1301 (11th Cir. 2002)*. See: **Valdes v. Crosby,** *390 F. Supp. 2d 1084 M.D. Fla. 2005.* Since prison defendants were moving for Summary Judgment in civil right action on prisoner's Eighth and 14th Amendment excessive force claim Plaintiff must show how defendants violated his rights. See: case cite, **Cummings v. Harrison,** *695 F. Supp. 2d 1263,* which he did in his civil complaint and affidavit. See: Exhibit A. See: portable video and medical records on said date Oct. 14, 2008. Also see: **Jones v. Huff,** *789 F. Supp 526, 536 (N.D.N.Y. 1992)* (slapping and punching a handcuffed inmate violated the 8th Amendment). Furthermore, a review of the stationary video recording cameras viewing the vicinity where the brutal physical assault/battery/abuse occurred; will show on the day and time in question, Plaintiff had no visible injuries when he entered the room where the incident transpired. Said video will also show all named defendants entering the room with Plaintiff and the length of time inside of the room. Defendant Chestnut arrived on the scene, entered the room and started participation in the attack. Said stationary video will

then show Plaintiff exiting the room with visible, physical injuries and bleeding from injuries that resulted from said abuse. However, Defendants have refused to disclose this favorable evidence of said stationary video re said abuse, contrary to **Brady v. Maryland,** *373 U.S. 83*. In lieu, Defendants have submitted known falsified statements and documents to cover up said excessive force in violation of **Giglio v. U.S.,** *405 U. S. 150 Fla. Stat. 768 28 re fraud, F.A.C. 33-208.002 (b)(2)(19)* re fraud. Plaintiff hereby submits with this pleading Plaintiff's motion to compel disclosure of said stationary video recording of incident as aforesaid. Kind of injuries suffered is one factor that the court may consider in determining purposes, the excessiveness of application of force in custodial setting. See: **Skrtich v. Thornton,** *280 F. 3d 1295*. The Defendants acted maliciously and sadistically for the very purpose of causing Plaintiff harm when at no time did Plaintiff pose a threat to defendants or himself. See: **Wilson v. Silcox,** *151 F. Supp. 2d 1345* states in an excessive force case under the 8th Amendment the inmate must demonstrate that the defendant acted maliciously and sadistically for the very purpose of causing harm. Due to the fact that Plaintiff was already in full restraints (handcuffs, blackbox, waist chains, shackles) therefore, defenseless when defendants started kicking and punching him. Plaintiff sufficiently stated on 8th Amendment claim. See: **Caudle-El v. Peters,** *727 F. Supp. 1175, 1180 (N.D. 111 1989)*. See:(handheld video camera).

**G-7# Defendants are not entitled to Summary Judgment:**

Summary Judgment is proper if "only" the pleadings and sworn statements shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56 (c)*; **Celotex Corporation v. Catrett,** *477 U. S. 317, 322-23 (1986)*. In this case there is a material fact. The court should view all evidence and any inferences that maybe drawn in the light most favorable to the non-movant. See: **Adickes v. S. H. Kress and Co.,** *144, 158-59, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*. The party seeking Summary Judgment must first identify grounds that show the absence of a genuine issue of material fact. **Celotex Corp. v. Cotrett,** *477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does not exist. See case cite: **Anderson v. Liberty lobby, Inc.,** *477 U. S. 241, 257, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. See: all exhibits and statements, documents attached to motion at hand. The statements and documents Defendants presented are falsified. See: **Giglio,** are done to intentionally mislead the court and protect themselves from criminal prosecution and dismissal or demotion from their official posts as required by (F.A.C.) (33). Where, the stationary video recording of the incident with Defendants continuously withholds the portable camera of the incident that defendants viewed. Plaintiff's

medical and mental health records will support Plaintiff's factual allegations and claims. Upon, the courts view of Plaintiff's factual allegations supported by law, do state a claim upon which relief can be granted **Haines v. Kernes,** *404 U. S. 519;* where, Plaintiff only need to present a "short and plain statement of the claim that will give the defendants fair notice of what the Plaintiff's claim is and the grounds upon which it rest." **Conley v. Gibson,** *355 U. S. 41.* Furthermore, the material facts necessary to determine the outcome of the ultimate facts is in conflict in relation to Plaintiff and Defendants. Plaintiff's story is contrary to Defendants story and "the judges function is not to weight the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." **U. S. v. One Parcel Property,** *894 F. Supp. 397.* Thus, only a jury can settle said facts in dispute. Hence, a jury trial is required to settle said stories encompassing material facts in dispute. Finally, for the above styled court to deny Plaintiff's Motion to Compel the disclosure of the stationary video camera re said staff abuse which is needed to support this pleading, this court would violate **Farmer v. Brennan,** *81 F. 3d. 1444.* Citing *Fed. R. Civil P. 56 (f)* also see: **Evans v. Stephens,** *407 F. 3d 1272, 1278 (11th Cir. 2005).*

**H-8#** **<u>Plaintiff does demonstrate a need for Court Appointed Counsel:</u>**

Plaintiff is currently a psyc'—4 patient housed in an Inpatient Mental Health, Transitional Care Unit, on pysc' medication and protected by the A.D.A. and has been writing grievances and petitionings/ litigating to this court via the assistance of a jailhouse lawyer. Plaintiff will need to depose Defendants among other witnesses. Plaintiff is unschooled in law/ color of law, and does not have the time, resources, or expertise to conduct meaningful depositions, and or cross-examine witnesses or depose Defendant P.H. Christie whom is no longer employed at Union Correctional Institution and whom is now employed at Suwannee Correctional Institution. Furthermore, Plaintiff is currently confined 24 hours a day to a Close Management, Mental Health, one-man cell and has very limited access to the law library having to submit an inmate request form to the law library and has to wait on a law clerk to bring requested research material sometimes having to wait 6-7 days or longer for materials. It would also create a burden on F.D.O.C. Plaintiff, and said defendants P.H. Christie at Suwanee C. I. to set up *pro se* depositions with said defendants F. Chestnut, J. R. Harris, J. Nash, J. Kelly, P.H. Christie. These among other issues warrant the appointment of counsel at this juncture. Also see: Exhibit <u>D</u>, "Plaintiff's Motion for Appointment of Counsel. <u>*/</u>

## PRELIMINARY STATEMENT

Plaintiff, Herbert Demond York, is an inmate in the custody of the Florida Department of Corrections ("Department"), currently incarcerated at Union Correctional Institution ("C.I."). At all time of the Oct. 14, 2008 incident Defendants Jesse Kelly; Joshua R. Harris; Philip H. Christie; Jonathan Nash; Captain Felicia Chestnut; were all employed by the Department in various positions at Union Correctional Institution. Officer Christie is not employed at Union Correctional Institution no more he's now employed at **Suwannee C.I.**. Plaintiff sues the defendants in their individual capacities for monetary damages and in official capacity for an injunction to install video camera in all bind spots at (Union C.I.). See EXHIBIT B/ and EXHIBIT E. Plaintiff filed suit on October 5, 2010 and amended it on 4/17/11 under *Section 1983*, alleging that the Defendants violated his 8th, 1st, part 13, 14th Amendment rights by using cruel and unusual punishment against him.

## DEFENDANT'S ALLEGATIONS

> 'The allegations that Captain Chestnut, Officer Nash, Officer Christie, Officer Kelly, Officer Harris and witnesses Officer Robinson, is unsubstantiated to the amount of force that was used on Plaintiff and the injury does not add up to the allegation Defendants and witness

made. Defendant's gave differing statement about who brought Plaintiff out of the cell. See exhibit's G/ H/ K/ J/ F/ and how force was used on Plaintiff.

**PLAINTIFF SHOWS**

**UNSUBSTANTIATAED STATMENTS**

Declaration of Deandra Robinson she stated that on Oct. 14, 2008, she was assigned as the top control movement officer in O-Dorm at Union Correctional Institution. She was present in the Second Floor Control room in O-Dorm, which is across from the control and stairwell area, and witnessed Officer Christie and Harris at approximately 7:40a.m. escorting inmate York off of wing (2). See exhibit (F). But in Nash, Harris, Kelly, Christie, affidavits, see exhibits G/ H/ K/ J/ they all stated that Defendant Nash and Kelly were the one who escorted Plaintiff off wing (2) on Oct. 14, 2008. Defendant Harris and Christie is changing their stories now stated that they almost lost their balance on the stairs after York snatched away from them. See exhibits J/ K/ L/ and witness statement exhibit F or landed on his back therefore, it's impossible for someone to have major injury on the back of his head when Defendant stated that they never forced Plaintiff on his back causing Plaintiff's back head to hit the floor on when Plaintiff fell down stairs his head never hit the floor. See, Exhibits M/ N/ O/ P as well as the hand held video recording camera on Oct. 14, 2008 that Plaintiff was on.

Plaintiff shows a genuine issue of material facts and their agreement between defendants and Plaintiff. Therefore, this issue SHALL BE ADDRESS to the non-movant party.

## SUMMARY OF ARGUMENT/STANDARD OF REVIEW

1) The defendants named in complaint in regards to this case deprived Plaintiff his rights secured under United States Constitution of Federal Laws and these deprivation occurred under color of Constitution, state, and Federal Laws through acts of conduct in bad faith, with malicious purpose in a manner exhibited wanton and disregard of human rights, safety, or property. And that for defendants action being sued in this complaint in their individual capacities. All defendants named in complaint do not qualify for immunity. See, (**McMillan v. Monroe County,** *520 U. s. 781, 785 (1999)*; **Gangoff v. Poccia,** *888 F. Supp. 1549 (M.D. Fla. 1995).*

2) The brief and complaint of the case filed by Plaintiff issue is of *materio* fact and is genuine and sufficient evidence such that a reasonable jury could return verdict for either party (**Boxer v. Harris,** *437 F. 3d 1107 (11th Cir. 2009)* and these records presents factual issues the court must not decide then it must deny Summary Judgment Motion and proceed to trial (**Tullins v. Albright,** *240 F. 3d 1319, 1320 (11th Cir. 2001)*; (**Clemons v. Duagherty County,** *684 F. 3d 1365, 1369 (11th Cir. 1982).*

3) In Summary Judgment contest, the court must construe *pro se* pleadings more liberally than those of a party represented by an attorney (**Coren v. Sasser,** *309 F. 3d 1296, 1301 (11th Cir. 2002).*

4) The excessive force used against Plaintiff is not in compliance with rules of *F.A.C. Chapter 33.602.210.*

5) All defendant's named in this complaint culpably in disregard to all rules, laws, and states intentionally, maliciously, and negligently, denied Plaintiff his secured under U. S. Constitution rights.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff Herbert Demond York, DC#B02769, respectfully requests that this Honorable Court GRANT this Motion and dismiss Defendants Motion to Dismiss in or the alternative motion for Summary Judgment as outlined above.

Date 1 / 20 / 12

/s/ Herbert D. York B02769
Herbert Demond York DC# B02769
Union Correctional Institution
7819 N.W. 228th Street
Raiford, Florida 32026

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Herbert Demond York, DC#B02769,
Plaintiff.

v. Case No: #3:10-CV-920-J-32TEM

Felicia D. Chestnut,
Defendants
____________________/

## INDEX TO EXHIBITS

Exhibit (A) "AFFIDAVIT OF HERBERT D. YORK."

Exhibit (B) Plaintiff's Motion for Injunction to install video cameras.

Exhibit (C) U.S. district Court Middle District of Florida (Jacksonville) Civil Docket for Case # 3:08-CV-00945-TJC-JRK.

Exhibit (D) Plaintiff's Motion for Appointment of Counsel.

Exhibit (E) Amended Civil Rights Complaint Form.

Exhibit (F) Declaration of Deandra Robinson.

Exhibit (G) Affidavit of Jonathan Nash.

Exhibit (H) Affidavit of Jesse Kelly.

Exhibit (I) Affidavit of Felicia Chestnut.

Exhibit (J) Affidavit of Philip Christie.

Exhibit (K)   Affidavit of Joshua Harris.

Exhibit (L)   F.D.O.C. Office of Inspector General Report of Investigation.

Exhibit (M)   Diagram of Injury.

Exhibit (N)   Chronological Record of Health Care.

Exhibit (O)   Emergency Room Record.

Exhibit (P)   Physician's Order Sheet.

Exhibit (Q)   Motion to compel stationary video recordings that witnessed Plaintiff being subjected to excessive force.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HERBERT DEMOND YORK, DC#B02769
Plaintiff.

EXHIBIT (A)

v.

CASE NO: 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et.al,
Defendants
_____________________________/

**"AFFIDAVIT"**

COMES NOW, the affiant, being duly sworn, and makes the following statement:

My name is, [HERBERT DEMOND YORK, DC# B02769] and I reside at [UNION CORRECTIONAL INSTITUTION, 7819 NW 228TH STREET, RAIFORD, FLORIDA 32026] (Address) and I affirm that the facts below are true:

At time of this incident on October 14, 2008, I was housed in O-dormitory at Union Correctional Institution where I received outpatient mental health treatment, and also where each defendant was assigned post in the capacity of security staff. Defendant Chestnut held rank or position of Correctional Officer Lieutenant during these times while remaining Defendants were ranked s officers then. **Note:** During this incident at (no) time I, Plaintiff tried to attack Defendant Harris. I did not try to head butt officer Harris nor did I try to snatch away from Defendant Harris or

_____________________________

Defendant Christie nor did I Plaintiff felled down the stairs nor did I threaten nor did I threaten Defendant at no time.

1). Prior to October 14, 2008, Plaintiff made several complaints concerning staff misconduct. These complaints resulted in staff, including Defendants, being begrudged against Plaintiff.

2). On October 14, 2008, at approximately 6:30 a.m. to 7:30 a.m. Plaintiff was housed in Cell #02-212L when Defendants Nash and Kelly approached Plaintiff and asked if he'd like to attend mental health group therapy, conducted by Ms. T. Davis—the psychological specialist in O-dorm?

3). Plaintiff accepted, and Defendants Nash and Kelly secured Plaintiff in restraints, including handcuffing his hands behind his back, shackling his feet, and locking a chain around his waist which was secured to his handcuffed wrists by a black box device.

4). After securing Plaintiff, Defendant Nash smiled at Plaintiff, stating, "Don't worry. You're not going very far." Defendants Nash, Kelly, then escorted Plaintiff towards the Wing's entrance door.

5). Exiting the wing into the hallway, Plaintiff encountered Defendant Christie, while still in the presence of Defendants Nash and Kelly. Defendant Christie told Plaintiff, "Hi, York. I see your black ass likes filing grievances and lawsuits on my co-workers."

6). Then Defendant Christie suddenly grabbed Plaintiff's shirt and shoved him inside a vacant dark room where Plaintiff hit the wall, lost his balance and fell to the floor. (This room was the designated area where mental health appointments were held between prisoners and mental health staff).

7). Then Defendants Harris, Nash, Kelly and Christie entered the room and began kicking Plaintiff in his face, back and chest, before taking turns punching and hitting Plaintiff's face with their fists and prison-issued walkie-talkies, for approximately (8) minutes.

8). Defendant Chestnut then entered the room and kicked Plaintiff in the face very hard, four or five times, rendering him unconscious. Plaintiff remained in full restraints during the entire attack, and neither threatened or even attempted to attack Defendants or other person in word, gesture, deed or other action.

9). Following this brutal assault, Nurse S. Wilson assessed and initially treated Plaintiff's physical injuries which were determined severed enough to require him to receive further medical treatment at the prison's Urgent Care Annex.

10). There, Nurse Clippets and an anonymous doctor assessed Plaintiff's physical injuries and after administering local anesthetic sewed (3) surgical sutures above Plaintiff's left eyelid, (3) surgical sutures to the upper right side of Plaintiff's head, and furthermore, applied adhesive sutures to the left side of

Plaintiff's head, above his right eyelid and to the back of his head. Medical staff didn't wrap Plaintiff's head in protective sterile gauze.

11). As a direct result of Defendants attack, Plaintiff sustained lacerations to the right side of his head, lips and eyes. Both of his eyes were bruised and swollen shut. His lips and head were also bruised and swollen, as were his nose and jowl. Plaintiff was knocked unconscious. And he experienced debilitating physical pain and suffering continuously after the assault.

12). Medical staff prescribed the medications "Tylenol" and "Keflex" to Plaintiff as additional treatment, and documented Plaintiff's injuries in his prison medical record which were deemed serious enough to order Plaintiff to be hospitalized in the prison hospital at R-dormitory, on "24 hours watch," after Defendant Chestnut prompted the anonymous doctor, advising, "We have to hide this inmate until he heals up some."

13). On October 15, 2008, Plaintiff reported the assault to Ms. T. Davis, who observed Plaintiff's physical injuries and filed an Incident Report on the same. Subsequently, Plaintiff filed (Emergency) Grievance of a Sensitive Nature, Log# is on prison record, at the Institutional-level, which (former) Warden, Mr. Milton Hicks approved at the stand point that the Office of the Inspector General (of the Florida Dept. of Corrections) would initiate action with an investigation into Plaintiff's allegations. Thus, Plaintiff exhausted his available administrative

remedies concerning defendants brutal assault on Plaintiff. Defendant Harris wrote Plaintiff a Disciplinary report for "Assault" and Defendant Christie wrote one on Plaintiff for "Disobeying an Order."

14). Plaintiff submitted numerous Inmate Sick-Call Request forms after Defendants' assault, in which he sought further medical treatment for the serious physical injuries and ongoing debilitating pain he suffered from since Defendants' assault, but further medical assessment or treatment was not forthcoming.

15). The majority of Plaintiff's personal records concerning this incident were thrown away or otherwise destroyed by prison guards. These records included sworn affidavits, Disciplinary reports, prison grievances, and sick-call and other requests.

16). Finally, Defendants Christie and Nash approached and threatened to beat Plaintiff to death if he continued filing prison grievances or a lawsuit. And Defendant Chestnut subsequently threatened Plaintiff, warning, "Inmate, you submit another inmate grievance, or see or talk to anyone else about this incident, I will personally give the order for any officers to beat you down again.

Plaintiff never head butted or tried to assault or head butted Defendant's Harris nor did Plaintiff felled the stairs this incident happen inside the mental health group room where doctor do call-outs at not on the quarterdeck or the stairwell landing at no point did Plaintiff pose a threat to himself or other or Defendants. [PLEASE

NOTE] I'm "YORK"/Plaintiff denying that I was verbally abusive and denying that I was a threat to the Defendant's. I was not or pose a threat to the Defendants. I was assaulted by the Defendants. I was kick, punched, even hit in the face with the Defendant's prison issue radio/walkie-talkie. And Defendant P. Chestnut even kick me in the face (4)to (5) times which caused me to go unconscious. I did not resist or struggle with Defendant's during the time of the assault.

FURTHER, AFFIANT SAYETH NOT. Pursuant to *§92.525 Florida Statutes, and 28 U.S.C. §1746*, I HEREBY DECLARE, under penalty of perjury that I have read the foregoing document and that the facts stated in it are true.

/s/ Herbert Demond York B02769
Affiant
Herbert Demond York B02769
DC# B02769
Date: 1 / 30 / 12

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, DIVISION**

**HERBERT DEMOND YORK DC #B02769,**
Plaintiff

v. Case. No.: 3:10-CV-920-J-32TEM

**FELICIA D. CHESTNUT, et,al,**
Defendants.
_______________________________________/

**"PLAINTIFF'S MOTION FOR
INJUNCTION TO INSTALL VIDEO CAMERAS"**

1). Pursuant to the applicable law/color of law, & Fed. R. Civ. Proc. Rule (65) (c) (65(b), Plaintiff states as follows:

2). Plaintiff moves this Court for an Injunction to: Install video cameras in all blind spots at Union Correctional Institution Medical, Group Rooms, holding cages, hallways, sally-ports, & inside & outside Rec. doors of V, U, S, T, O, (U.C.A.) Dorms.

3). Plaintiff meets the four (4) requisites for an Injunction as follows:

A) The Substantial likelihood of success on the merits. Plaintiff has evidence such as Affidavit, Medical Records, & Video Cameras in which capture the Incident at hand, etc. Which cannot be refuted at trial.

B) Irreparable Injury Absent Injunction.

**EXHIBIT B**

If the Court don't intervene and grant the Injunction, staff abuse, assaults will continue on inmates and additional Civil Suits will continue re-same will ensue log the Court's Docket.

C). <u>Injury outweighs the damages to Defendants.</u>

The interest of Plaintiff & Affiant & Plaintiff injuries outweighs the interest of F.D.O.C. through F.D.O.C. may pay for cameras & installment – its benefit in all abused.

D). <u>Injunction does not adverse the public interests.</u>

Whenever prisoners can enjoy the U.S. Const. rights to be free for cruel & unusual punishment without impediments the interest if the public is served and not adversely affected.

**"MEMORANDUM OF LAW"**

The cases do not clearly distinguish between the grounds for granting an Injunction & grounds for granting final injunctive relief. However is it clear that for the granting of an injunction one (1) the party seeking the injunction should have a clear legal right to relief, two (2) there must be a likelihood that irreparable harm will result if the relief is not granted, and three (3) there must be no adequate remedy at law, See **Wilson v. Sandstrom,** 317 So.2d 732, 736 (Fla. 1995) ct. denied, 423 U.S. 1053 (1976). The Trial Court's order granting the injunction must contain clear and express factual findings supporting each of the four (4)

conclusions necessary to enter a injunction. See **Liberty Fin. Mortg. Corp. v. Clampitt,** 667 So.2d 880, 881 (Fla. 2nd DCA 1996). Plaintiff shows the Court a strong likelihood that the threats & assaults will continue if this Injunction is denied. Its more than a remote possibility; it must be so imminent & probable as reasonably to demand preventive action by the Court, **City of Coral Springs v. Florida Nat. Properties,** 340 So. 2nd 1271, 1272 (Fla. 4th DCA 1976). Plaintiff has been assaulted more than once in the blind spots in Union Correctional Institution as well as other inmates. Plaintiff seeks this injunction for good cause. Also finding that Defendant's/State Officials can be sued itself may not be sued. See **Young,** 209 U.S. 123m 155-56, 28. Ct. 441, 452, 52 L.Ed. 714 (1908). Plaintiff meets all level & needs for a Injunction at hand.

## CONCLUSION

According, upon due consideration Plaintiff hereby requests that this Honorable Court grant this Motion for Injunction to Install Video Cameras. This request is made in good faith.

Respectfully submitted,

Herbert Demond York B02769

Herbert Demond York, DC B02769, Pro-se
Union Correctional Institution
7819 N.W. 228th Street
Raiford, Florida 32026

CLOSED

# U.S. District Court
# Middle District of Florida (Jacksonville)
# CIVIL DOCKET FOR CASE #: 3:08-cv-00945-TJC-JRK

York v. Chestnut et al
Assigned to: Judge Timothy J. Corrigan
Referred to: Magistrate Judge James R. Klindt
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 10/01/2008
Date Terminated: 08/24/2009
Jury Demand: None
Nature of Suit: 555 Prisoner Civil Rights (Prison Condition)
Jurisdiction: Federal Question

**Plaintiff**

**Herbert Demond York**

represented by **Herbert Demond York**
B02769
Union Correctional Institution
7819 N.W. 228th Street
Raiford, FL 32026
PRO SE

V.

**Defendant**

**Lt. Felicia Chestnut**
*in his/her individual capacity*

**Defendant**

**Sergeant B. Harper**
*in his/her individual capacity*

**Defendant**

**Sergeant Bailey**
*in his/her individual capacity*

**Defendant**

**Officer M.L. Lewis**
*in his/her individual capacity*

**Defendant**

**Officer J.R. Harris**
*in his/her individual capacity*

**Defendant**

Officer Ruilse
*in his/her individual capacity*

**Defendant**

EXHIBIT (C)

**A. Garza**
*Officer, in his/her individual capacity*

**Defendant**

**Officer J.J. Oliver**
*in his/her individual capacity*

**Defendant**

**Nurse Wilson**
*in his/her individual capacity*

**Defendant**

**Michael Hicks**
*Warden, in his/her individual capacity*

**Defendant**

**Union Correctional Inspector Staff**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/01/2008 | 1 | COMPLAINT against Ms. Wilson, Michael Hicks, Union Correctional Inspector Staff, Felicia Chestnut, B. Harper, Sergeant Bailey, M.L. Lewis, J.R. Harris, Ruilse, D. Garza, J.J. Oliver filed by Herbert Demond York. (No Copies Received)(EAM) (Entered: 10/01/2008) |
| 10/01/2008 | 2 | MOTION for leave to proceed in forma pauperis/affidavit of indigency by Herbert Demond York. (EAM) Motions referred to Magistrate Judge James R. Klindt. (Entered: 10/01/2008) |
| 10/01/2008 | 3 | PRISONER consent form and financial certificate by Herbert Demond York. (EAM) (Entered: 10/01/2008) |
| 10/01/2008 | 4 | DECLARATION of Statement of Facts of Herbert Demond York re 1 Complaint by Herbert Demond York. (EAM) (Entered: 10/01/2008) |
| 10/01/2008 | 5 | AMENDED STANDING ORDER: Filing of documents that exceed twenty-five pages. Signed by All Jacksonville Divisional Judges on 5/25/2005. (EAM) (Entered: 10/01/2008) |
| 10/08/2008 | 6 | NOTICE of designation under Local Rule 3.05 - track 1. Signed by Deputy Clerk on 10/8/2008. (MD) (Entered: 10/08/2008) |
| 10/30/2008 | 7 | ORDER granting 2 Motion for leave to proceed in forma pauperis/affidavit of indigency to the extent that the case may proceed without prepayment of the entire filing fee, and requiring Petitioner, within 30 days, to pay the $1.00 initial filing fee. Signed by Magistrate Judge James R. Klindt on 10/30/2008. (BL) Modified text on 11/5/2008 (SPW). (Entered: 10/30/2008) |
| 12/31/2008 | 8 | ORDER TO SHOW CAUSE, requiring Plaintiff, within 30 days, to show cause why this case should not be dismissed for his failure to pay the partial filing fee. Signed by Magistrate Judge James R. Klindt on 12/31/2008. (BL) |

| | | |
|---|---|---|
| | | (Entered: 12/31/2008) |
| 01/15/2009 | 9 | RESPONSE TO 8 ORDER TO SHOW CAUSE, filed by Herbert Demond York (Titled: Why Should This Case Pro Se). (SPW) (Entered: 01/15/2009) |
| 02/23/2009 | 10 | ORDER requiring Plaintiff, within 30 days, to pay the $1.00 initial partial filing fee. Signed by Magistrate Judge James R. Klindt on 2/20/2009. (BL) (Entered: 02/23/2009) |
| 03/30/2009 | 11 | EXHIBITS re 1 Complaint by Herbert Demond York (filed separately). (Entitled: Notice to the Court) (TD) (Entered: 03/31/2009) |
| 03/31/2009 | 12 | ORDER TO SHOW CAUSE, requiring Plaintiff, within 30 days, to show cause why this case should not be dismissed for failure to pay the partial filing fee. Signed by Magistrate Judge James R. Klindt on 3/30/2009. (BL) (Entered: 03/31/2009) |
| 04/09/2009 | 13 | MOTION for leave to proceed in forma pauperis/affidavit of indigency by Herbert Demond York. (TD) Motions referred to Magistrate Judge James R. Klindt. (Entered: 04/09/2009) |
| 04/09/2009 | 14 | AFFIDAVIT of indigency by Herbert Demond York. (TD) (Entered: 04/09/2009) |
| 04/09/2009 | 15 | RESPONSE re 10 Order (Entitled: Motion on Why Was the Delay of The Case) filed by Herbert Demond York. (TD) (Entered: 04/09/2009) |
| 04/22/2009 | 16 | MOTION to amend/correct 1 Complaint by Herbert Demond York. (TL) (Entered: 04/22/2009) |
| 05/19/2009 | 17 | ORDER granting 13 Motion for leave to proceed in forma pauperis/affidavit of indigency; granting 16 motion to amend/correct, and Plaintiff, within 60 days, shall file an Amended Complaint that reflects the proposed changes. Signed by Magistrate Judge James R. Klindt on 5/16/2009. (BL) (Entered: 05/19/2009) |
| 08/21/2009 | 18 | ORDER dismissing case, with directions to the Clerk. Signed by Judge Timothy J. Corrigan on 8/21/2009. (DD) (Entered: 08/21/2009) |
| 08/24/2009 | 19 | JUDGMENT Signed by Deputy Clerk on 8/24/2009. (TL) (Entered: 08/24/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/17/2011 12:52:08 | | | |
| PACER Login: | fg1266 | Client Code: | york |
| Description: | Docket Report | Search Criteria: | 3:08-cv-00945-TJC-JRK |
| Billable Pages: | 3 | Cost: | 0.24 |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Herbert Demond York, DC#B02769,
Plaintiff.

v. Case No: #3:10-CV-920-J-32TEM

Felicia D. Chestnut, **EXHIBIT D**
P. H. Christie,
J. Nash,
J. Kelly,
J. R. Harris,
Defendants
_____________________/

**PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL**

COMES NOW, Plaintiff, Herbert D. York, *pro se*, and pursuant to *28 U.S.C. §1915 (e)(1),* moves for an Order to Appoint him legal counsel in this case, and in support states the following:

1. Plaintiff is unable to afford professional counsel, is indigent, and has requested this Court for leave to proceed with this case in *forma pauperis.*

2. Plaintiff's very low level of formal education substantially limits Plaintiff's ability to read, comprehend, or sufficiently grasp the process, procedure, and complexity of prosecuting this case in *pro se* manner.

3. Plaintiff must rely on others to write most of his pleadings and other functions due to his educational, mental and physical impairments.



However, assistance is not always forthcoming, and as such, will likely result in Plaintiff's progress in this case being hampered and delayed. Plaintiff was even forced to wait over a year to file this complaint because he only now has been helped by another prisoner to write, compile, formulate, and file this complaint. Without this prisoner's help, Plaintiff would not have been able himself alone.

4. Plaintiff has been unsuccessful in his several attempts to obtain counsel in this case.

## CONCLUSION

Thus, Plaintiff requests, in good faith, this Court to "**grant**" appoint legal counsel to represent him in this case.

Respectfully submitted,

1 / 20 / 12
DATE

Herbert D York

Herbert D. York, DC# B02769
Plaintiff, *Pro se*
Union Correctional Institution
7819 N.W. 228th Street
Raiford, Florida 32026

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

"Amended"
CIVIL RIGHTS COMPLAINT FORM

Herbert Demond York DC# ... CASE NUMBER: 3:10-cv-920-J-32TEM
(To be supplied by Clerk's Office)

(Enter full name of each Plaintiff and prison number, if applicable)

v.

(Capt.) Felicia D. Chestnut; (C/O) Joshua R. Harris;
(C/O) Philip H. Christie; (C/O) Jonathan D. Nash;
(C/O) Jesse R. Kelly;

(Enter full name of each Defendant. If additional space is required, use the blank area directly to the right).

In their Individual Capacities and In their Offical Capacities.

**ANSWER ALL OF THE FOLLOWING QUESTIONS:**

I. PLACE OF PRESENT CONFINEMENT: Union Correctional Institution 7819 N.W. 228th Street Raiford Florida 32026
(Indicate the name and location)

II. DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS? Yes (✓) No ( )

[If your answer is YES, after reviewing the exhaustion requirements, answer the following questions]

EXHIBIT (E)

EXHAUSTION OF ADMINISTRATIVE REMEDIES: Pursuant to the Prison Litigation Reform Act or 1995, Title VIII, Section 803 Amendments to Civil Rights of Institutionalized Persons Act, exhaustion of administrative remedies is required in any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility. Any required grievances, appeals, and responses must be submitted to the Court to verify exhaustion. (If your Complaint concerns conditions at state prison facilities, you must answer the following questions in Section II of this form. If the Complaint concerns conditions at a county jail or local correctional facility, you must complete Section III of this form.)

EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:

General Grievance

1. Informal Grievance (Form DC3-005)
2. Formal Grievance (Form DC1-303)
3. Appeal to the Office of Secretary (Form DC1-303)

Other Grievance

Inmates are not required to utilize the informal Grievance process in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by rule 33-11.0065 Incentive Gain Time, or a grievance involving disciplinary action (does not include corrective consultations) governed by chapter 33-22. The grievance steps are set forth in Fla. Admin. Code Chapter 33-29.

Questions:

A. Emergency Grievance, Grievance of Reprisal, or Grievance of a Sensitive Nature, Grievance Alleging Violation of the American with Disabilities Act, Medical Grievance, Grievance, Grievance Involving Admissible Reading Material, Grievance Involving Gain Time Governed by Rule 33-11.0065 Incentive Gain Time, or Grievance Involving Disciplinary Action Governed by Chapter 33-22 (Request for Administrative Remedy or Appeal, bypassing the informal grievance step).

1. Did you submit an above-mentioned grievance to the Superintendent and/or to the office of Secretary (Form DC1-303)? Yes (✓) No ( )

2. If so, you must attach a copy of the grievance and response to this Complaint form.

3. Were you denied emergency status? Yes ( ) No (✓)

   a. If so, did you go through the informal grievance, formal grievance and appeal process? Yes ( ) No ( )

   b. If so, you must attach copies of the grievance/appeals and responses to this Complaint form.

B. Informal Grievance (Request for Interview)

1. Did you submit an informal grievance (Form DC3-005)? Yes ( ) No (✓)

2. If so, you must attach a copy of the grievance and response to this Complaint form.

C. Formal Grievance (Request for Administrative Remedy or Appeal)

1. Did you have a disciplinary hearing concerning this matter? Yes ( ) No (✓)

2. If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this Complaint form.

3. Did you submit a formal grievance (Form DC1-303)? Yes ( ) No (✓)

4. If so, you must attach a copy of the grievance and response to this Complaint form.

D. Appeal to the Office of the Secretary (Request for Administrative Remedy or Appeal)

1. Did you submit an appeal to the Office of the Secretary (Form DC1-303)? Yes ( ) No (✓)

2. If so, you must attach a copy of the appeal and response to this Complaint form.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this __________ day of __________________________, 2 011________.

Herbert Bernard York DC# B02769
Signature of Plaintiff

III. DOES YOUR COMPLAINT CONCERN EVENTS IN A COUNTY JAIL OR LOCAL FACILITY? Yes ( ) No (✓)

If your answer is YES, answer the following questions.

A. Is there a grievance procedure at your institution or jail? Yes ( ) No ( )

B. Did you present the facts relating to your Complaint in the grievance procedure? Yes ( ) No ( )

C. If your answer is YES:

1. What steps did you take? ______________________________

______________________________

2. What were the results? ______________________________

______________________________

3. To demonstrate exhaustion, you must submit copies of all relevant grievances/appeals and responses.

D. If your answer is NO, explain why not: ______________________________

______________________________

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this ________ day of ______________________, 2 011 ________.

Herbert Desmond Yob DC# B322769
Signature of Plaintiff

IV. PREVIOUS LAWSUITS:

A. Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (✓)

B. Have you initiated other lawsuits in federal court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes (✓) No ( )

C. If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

1. Parties to previous lawsuit:

Plaintiff(s): HERBERT Demond York DC# B02769

Defendant(s): Hicks, Chestnut, Baily, Harper, Lewis, HARRIS, Oliver, Garza, Ruiles, AND Wilson;

2. Court (If federal court, name the district; if state court, name the county):

The U.S. District Court, Middle District of Florida, Jacksonville Div.

3. Docket Number: Plaintiff does not recall, nor can find out the #.

4. Name of judge: Magistrate: James R. Klindt

5. Briefly describe the facts and basis of the lawsuit: Plaintiff alleged Defendants violated his constitutional rights surrounding incident where he was injured during a physical assault by prison guards.

6. Disposition (Was the case dismissed? Was it appealed? Is it still pending?):

The case was dismissed due to Plaintiff's failure to amend his initial Civil Rights Complaint.

7. Approximate filing date: August, 2008

8. Approximate disposition date: August 2009

D. Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify theses suits below by providing the case number, the style, and the disposition of each case:

The case described above in section IV. C. was dismissed after Plaintiff failed to amend it. Plaintiff's personal records have since been destroyed, and so, he does not know if this constituted the type of dismissal questioned about herein

V. PARTIES: In part A of this section, indicate your full name in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A. Name of Plaintiff: HERBERT DEMOND YORK [illegible] (A BLACK MALE)

Mailing address: UNION CORRECTIONAL INSTITUTION 7819 NORTH WEST 228th Street RAIFORD, FLORIDA 32026.

B. Additional Plaintiffs: NONE

In part C of this section, indicate the full name of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C. Defendant: Felicia Chestnut (a Black Female)

Mailing Address: UNION CORRECTIONAL INSTITUTION 7819 North West Street RAIFORD FLORIDA 32026.

Position: (CAPT.)

Employed at: UNION CORRECTIONAL INSTITUTION.

D. Defendant: Joshua R. Harris, (a White Male)

Mailing Address: UNION CORRECTIONAL INSTITUTION 7819 North West 228th Street RAIFORD FLORIDA 32026

Position: (CORRECTIONAL OFFICER)

Employed at: UNION CORRECTIONAL INSTITUTION.

E. Defendant: Jonathan D. Nash (a White Male)

Mailing Address: UNION CORRECTIONAL INSTITUTION 7819 NORTH WEST 228th Street RAIFORD FLORIDA 32026

Position: (CORRECTIONAL OFFICER)

Employed at: UNION CORRECTIONAL INSTITUTION.

F. Defendant: Jesse R. Kelly (a White Male)

Mailing Address: UNION CORRECTIONAL INSTITUTION 7819 NORTH WEST 228th Street RAIFORD, FLORIDA 32026

Position: (CORRECTIONAL OFFICER)

Employed at: UNION CORRECTIONAL INSTITUTION.

G. Defendant: Philip H. Christie (a White Male)

Mailing Address: Suwannee Correctional Institution

Position: (Correctional Officer)

Employed at: Suwannee Correctional Institution.

VI. STATEMENT OF CLAIM: State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific. If you intend to allege a number of related claims, set forth each daim in a separate paragraph. Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.

Defendants F. Chestnut; P. Christie; J. Nash; J. Kelly; and J. Harris are each being Sued in their individual Capacity for Monetary Damages & official Capacity for an Injunction, & for Acting under the color of State Law while Maliciously & Sadistically using cruel and unusual punishment to wantonly inflict Plaintiff with physical harm, Serious injury, and Severe physical pain in violation of Plaintiff's Eighth, First part 13 & Fourteenth Amendment under the United States Constitution.

VII. STATEMENT OF FACTS: State as briefly as possible the FACTS of your case. Describe how each defendant was involved. **Do not make any legal arguments or cite any cases or statutes.** State with as much specificity as possible the facts in the following manner:

1. Name and position of person(s) involved.
2. Date(s).
3. Place(s).
4. Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5. Nature and extent of injury (*i.e.*, physical injury or how you were harmed by the acts of the defendant(s)).

Defendant Felicia Chestnut is a Correctional Officer Captain. Defendant Philip Christie, Joshua Harris, Jonathan Nash, Jesse Kelly, are each Correctional Officers. Plaintiff Herbert D. York is a State Prisoner.

At all times relevant to the facts below, Plaintiff was housed in D-Dormitory at Union Correctional Institution where he received outpatient mental Health treatment, and also where each Defendant was assigned posts in the capacity of Security Staff. Defendant Chestnut held the rank or position of Correctional Officer Lieutenant during these times, while remaining Defendants were ranked as Correctional Officers.

**Statement of Facts, continued:**

1.) Prior to October 14th, 2008 Plaintiff made several complaints concerning staff misconduct. These Complaints resulted in staff, including Defendant's, **"being begrudged against Plaintiff."**

2.) On October 14th, at approximately 6:30 a.m. to 7:30 a.m. Plaintiff was housed in cell # 02 – 212L when Defendants Nash and Kelly approached Plaintiff and asked if he'd like to attend mental health group therapy, conducted by Ms. T. Davis – Psychological Specialist in O – Dorm.

3.) Plaintiff accepted, and Defendant's Nash and Kelly secured Plaintiff in restraints, including handcuffing his behind his back, shackling his feet, and locking a chain around his waist which was secured to his handcuffed wrists by a black box device.

4.) After securing Plaintiff, Defendant Nash smiled at Plaintiff, stating, **"Don't worry. You're not going very far."** Defendants Nash, Kelly, and [illegible] then escorted Plaintiff towards the wings entrance door.

5.) Exiting the wing into the hallway, Plaintiff encountered Defendant Christie, while still in the presence of Defendants Nash and Kelly. Defendant Christie told Plaintiff, **"Hi York. I see your black ass likes filing grievances and lawsuits on my co-workers."**

6.) Then Defendant Christie suddenly grabbed Plaintiff's shirt and shoved him inside a vacant, dark room where Plaintiff hit the wall, and lost his balance and fell to the floor. (This room was the designated area where mental health appointments were held between prisoners and mental health staff.

7.) Then Defendants Harris, Nash, Kelly, and Christie entered the room and began kicking the Plaintiff in the face, back and chest, before taking turns punching and hitting Plaintiff's face with there fists and prison issued radio walkie talkies for, **"approximately eight (8) minutes!"**

8.) Defendant Chestnut then entered the room and kicked Plaintiff in the face, **"very hard,"** four (4) or five (5) times, rendering him unconscious. Plaintiff remained in full restraints during the entire attack, and neither threatened or even attempted to attack Defendants or other person in word, gesture deed or other action.

9.) Following this **"brutal assault,"** Nurse S. Wilson assessed and initially treated Plaintiff's physical injuries which were deemed severe enough to require him to receive further medical treatment at the, **"Prison's Urgent Care Annex!"**

10.) There, Nurse Clippet and an anonymous Doctor assessed Plaintiff's physical injuries and, **"after administering local anesthetic, sewed three (3) surgical sutures above Plaintiff's left eyelid, three (3) surgical sutures to the upper right side of Plaintiff's head, and furthermore applied adhesive sutures to the left side of Plaintiff's head, above his right eyelid and to the back of his head!"** Medical staff then wrapped Plaintiff's head in protective sterile gauze.

11.) As a direct result of Defendant's attack, Plaintiff sustained lacerations to the right side of his head, lips and eyes. Both of his eyes were bruised and swollen shut. His lips and head were also bruised and swollen, as were his nose and jowl. Plaintiff was knocked unconscious and he experienced debilitating physical pain and suffering after the assault.

12.) Medical staff prescribed the medications, **"Tylenol and Kelflex,"** To Plaintiff as additional treatment, and documented Plaintiff's injuries in his prison medical record which were deemed serious enough to order Plaintiff to be hospitalized in the prison hospital at, R – Dorm, **"on twenty four (24) hour watch,"** after Defendant Chestnut prompted the anonymous doctor, advising, **"we have to hide this inmate until he heals up."**

**13.)** On October 15th, 2008, Plaintiff reported the assault to Ms. T. Davis, who observed Plaintiff's physical injuries and filed an Incident Report on the same. Subsequently, Plaintiff file, "**(Emergency) Grievance of a Sensitive Nature,**" Log number is on prison record at the Institutional – Level, which (former) Warden, Mr. Milton Hicks approved at the standpoint that the Office of the Inspector General (of the Florida Department of Corrections) would initiate action with an investigation into Plaintiff's allegations. Thus, Plaintiff exhausted his available administrative remedies concerning, "**Defendant's brutal assault on Plaintiff!**" Defendant Harris wrote a Disciplinary Report for, "**Assault**" and Defendant Christie wrote one (1) on Plaintiff for, "**Disobeying an Order.**"

14.) Plaintiff submitted numerous, "**Inmate Sick-Call Request Forms,**" after Defendant's assault, in which he sought further medical treatment for the serious physical injuries and ongoing debilitating pain he suffered from since Defendant's assault, but further medical assessment or treatment was "**not**" forthcoming.

15.) The majority of Plaintiff's personal records concerning this incident were, "**thrown away or other destroyed by prison guards! These records included, "Sworn Affidavits' Disciplinary Report, Prison Grievances, and Sick-Call and other such requests!**"

16.) Finally, **"Defendants Christie and Nash approached and threatened to beat Plaintiff to DEATH if he continued filing prison grievances or a lawsuit!"** Defendant Chestnut subsequently threatened Plaintiff, warning him, **"Inmate, you submit another inmate grievance, or see or talk to anyone else about this incident, I will personally give the ORDER for my Officers to beat you down again!"**

VIII. RELIEF REQUESTED: State briefly what you want the Court to do for you. Again, do not make any legal arguments or cite any cases or statutes.

WHEREFORE, Plaintiff requests this Court to enter judgement granting Plaintiff: 1) leave to proceed in forma pauperis; 2) Appointment of Counsel; 3) Nominal Damages against each Defendant in amount of $1.00; 4) Compensatory Damages in amount of $40,000.00 against each Defendant, jointly and severally; 5) Punitive Damages in amount of $60,000.00 against each Defendant; 6) Plaintiff's costs in this suit; 7) Injunctive relief; 8) Jury trial demanded on all issues triable by jury; and 9) Any additional relief this Court deems just, proper, and equitable.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Signed this __________ day of ____________________________, 2010.

Herbert D. York, D.C.# B02769

(Signatures of all Plaintiffs)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v.

Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.

_______________________/

## DECLARATION OF DEANDRA ROBINSON

I, Deandra Robinson, pursuant to 28 U.S.C. s. 1746, make this unsworn declaration under penalty of perjury and declare that the statements made below are true and state:

1. I am employed as a Correctional Officer by the Florida Department of Corrections and I work at Union Correctional Institution.

2. On October 14, 2008, I was assigned as the Top Control Movement Officer in O-Dorm at Union CI. I was present in the second floor control room in O-dorm, which is across from the control room and stairwell area, and witnessed the use of force on inmate Herbert York.

3. At approximately 7:40 a.m., Officers Christie and Harris were escorting inmate York off of wing 2. I could see that York was being noncompliant and was talking, but I could not make out the words. York lunged at Officer Harris and tried to head butt him. York was held against the conference room door in order to prevent further assault. They continued to struggle and Officers Christie and Harris forced York to the floor with minimal force in order to calm him down. The officers resumed the escort and York continued jerking, pulling and being belligerent. By the stairwell, York lunged toward Officer Harris again. At the stairs, York continued to struggle with the officers and York then fell down the stairs to the landing. Officers Christie and Harris helped York up and then I did not see any more of the incident.

4. I did not witness any force being used on York inside the conference room. I did not witness anyone punch, kick or strike inmate York in any way. Officer Christie and Officer Harris used the minimal amount of force necessary to prevent further assault. The force used was not excessive.

I declare under penalty of perjury that the foregoing is true and correct.

[signature]
DEANDRA ROBINSON

Executed on 7/14/11
Date

EXHIBIT (F)



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v. Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.
_______________________________/

AFFIDAVIT OF JONATHAN NASH

STATE OF FLORIDA
COUNTY OF UNION

BEFORE ME, the undersigned authority, personally appeared JONATHAN NASH, who first after being duly sworn says:

1. My name is Jonathan Nash and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

2. I am a Correctional Officer employed by the Florida Department of Corrections, and currently work at Union Correctional Institution.

3. On October 14, 2008, I was assigned during administrative shift, which at that time ran from 7 a.m. to 4 p.m., to work O-Dormitory at Union Correctional Institution. At the beginning of my shift, Officer Kelly and I were pulling inmates from wing 2 who were scheduled to participate in mental health groups. At approximately 7:40 am, Officer Kelly and I pulled inmate Herbert York DC#B02769 from his second floor cell after handcuffing him in front. We then applied leg irons and escorted inmate York off the wing toward the quarterdeck. Officer Kelly and I were walking just behind inmate York during the escort. As we entered the quarterdeck area, we turned right toward the stairwell where Officers Harris and Christie were waiting to complete the escort to the mental health group area. Just as we turned right, inmate York suddenly lunged at Officer Harris in an attempt to head butt him. While I do not recall everything that happened that morning, I do remember that the officers pinned inmate York to the door of an adjacent conference room to try to regain control. However, inmate York continued to resist and at that point Officers Christie and Harris forced York to the quarterdeck floor in order to prevent further assault by the inmate.

4. When York finally stopped struggling, York was assisted to his feet by Officers Christie and Harris and he was instructed to go down the stairs. At this point I do not have a

EXHIBIT (G)

clear recollection of the series of events, but I do recall that as York started down the stairs he began resisting again and at some point fell forward down the stairs.

5. I did not use any force or participate in any way during this incident. I have not retaliated against or threatened York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick or punch York, nor did I hit him with my radio. Any claim that I threatened to beat York to death if he continued to file grievances or a lawsuit it untrue. I did not observe any other staff hit, punch, kick or otherwise assault York. If I had observed such actions I would have reported them to the appropriate authorities. I observed Officer Harris and Officer Christie use only the minimal amount of force necessary to put an end to York's continued aggressive and assaultive actions.

FURTHER AFFIANT SAYETH NAUGHT.

JONATHAN NASH
Affiant

Sworn to and subscribed before me this 17 day of August 2011.

(Signature of Notary Public, State of Florida)

______________________
Print, type of stamp commissioned name of notary public

Personally known ___ or Produced identification ✓ (type of identification State ID)

NOTARY PUBLIC STATE OF FLORIDA
LINDA L. CLANCE
MY COMMISSION # EE 066551
EXPIRES: February 22, 2015
Bonded Thru Budget Notary Services

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v.

Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.

______________________________/

## AFFIDAVIT OF JESSE KELLY

STATE OF FLORIDA
COUNTY OF UNION

BEFORE ME, the undersigned authority, personally appeared JESSE KELLY, who first after being duly sworn says:

1. My name is Jesse Kelly and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

2. I am a Correctional Officer employed by the Florida Department of Corrections, and currently work at Union Correctional Institution.

3. On October 14, 2008, I was assigned during the administrative shift, which at that time ran from 7 a.m. to 4 p.m., to work O-Dormitory at Union Correctional Institution. At the beginning of my shift, Officer Nash and I were pulling inmates from wing 2 who were scheduled to participate in mental health groups. At approximately 7:40 am, Officer Nash and I pulled inmate Herbert York DC#B02769 from his second floor cell after handcuffing him in front. We then applied leg irons and escorted inmate York off the wing toward the quarterdeck. Officer Nash and I were walking just behind inmate York during the escort. As we entered the quarterdeck area, we turned right toward the stairwell where Officers Harris and Christie were waiting to complete the escort to the mental health group area. Just as we turned right, inmate York suddenly lunged at Officer Harris in an attempt to head butt him. While I do not recall everything that happened that morning, I do recall that at one point Officers Christie and Harris forced York to the quarterdeck floor in order to prevent further assault by the inmate.

4. When York finally stopped struggling, York was assisted to his feet by Officers Christie and Harris and he was instructed to go down the stairs. At this point I do not have a clear recollection of the series of events, but I do recall that as York started down the stairs he began resisting again and at some point fell forward down the stairs.

EXHIBIT (H)

5. I did not use any force or participate in any way during this incident. I have not retaliated against or threatened York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick or punch York, nor did I hit him with my radio. I did not observe any other staff hit, punch, kick or otherwise assault York. If I had observed such actions I would have reported them to the appropriate authorities. I observed Officer Harris and Officer Christie use only the minimal amount of force necessary to put an end to York's continued aggressive and assaultive actions.

FURTHER AFFIANT SAYETH NAUGHT.

JESSE KELLY
Affiant

Sworn to and subscribed before me this 17 day of August, 2011.

(Signature of Notary Public, State of Florida)

______________________________
Print, type of stamp commissioned name of notary public

Personally known ___ or Produced identification ✓ (type of identification State ID)

NOTARY PUBLIC STATE OF FLORIDA
LINDA L. CLANCE
MY COMMISSION # EE 056551
EXPIRES: February 22, 2015
Bonded Thru Budget Notary Services

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v. Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.
_____________________________/

AFFIDAVIT OF FELICIA CHESTNUT

STATE OF FLORIDA
COUNTY OF UNION

BEFORE ME, the undersigned authority, personally appeared **FELICIA CHESTNUT**, who first after being duly sworn says:

1. My name is Felicia Chestnut and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

2. I am a Captain employed by the Florida Department of Corrections, and currently work at Union Correctional Institution. At the time relevant to this Complaint I was a Lieutenant at Union CI.

3. On October 14, 2008, I was notified of a spontaneous use of force on inmate Herbert York that occurred in O-Dormitory at Union CI. I was the Officer in Charge when the use of force occurred. I was not present during the use of force. Upon being notified of the incident, I instructed Officers Keith Cavanagh, Joshua Olive, and Bennie Harper to assist in the escort of inmate York from the O-Dorm downstairs holding cell to the Urgent Care Area. I also instructed Officer David Zwicker to videotape the post use of force physical of inmate York.

4. I arrived at the holding cell at approximately 7:48 am and made an introductory statement on the tape. I ensured that York was seen by Medical in the dorm and was present during his assessment by Nurse Sidra Wilson. I was also present during his escort to the Urgent Care Area for sutures and for subsequent housing in the infirmary for observation.

5. I was told that during the use of force Officers Joshua Harris and Phillip Christie discovered that inmate York had an unknown slippery substance on his body, which made it difficult for the officers to maintain their hold on him. After the use of force, a search was conducted of inmate York's cell to look for the unknown slippery substance. A cup of butter

EXHIBIT (I)

was found in York's cell. This practice has become a common tactic used by inmates over the past few years where they put slippery substances, such as butter or Vaseline, on their skin in an attempt to slip out of their handcuffs. This presents a security threat and may be indicative of the inmate planning to get out of his restraints or to get away from an officer's hold, where he would then pose a threat to other inmates or staff.

6. I was not present for the use of force on inmate York. Any allegation that I was present or participated in the use of force in any way is untrue. I have not retaliated against or threatened York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick York in the face. I did not tell the doctor to keep York in the infirmary in order to "hide" him until his injuries healed. Dr. Aviles made the decision to keep York in the infirmary for observation. I never threatened to order officers to beat York down if he filed any grievances or spoke to anyone about this use of force.

FURTHER AFFIANT SAYETH NAUGHT.

[signature]
FELICIA CHESTNUT
Affiant

Sworn to and subscribed before me this 16 day of March 2011.

[signature]
(Signature of Notary Public, State of Florida)

NOTARY PUBLIC STATE OF FLORIDA
LINDA L. CLANCE
MY COMMISSION # EE 066551
EXPIRES: February 22, 2015
Bonded Thru Budget Notary Services

_______________________________
Print, type of stamp commissioned name of notary public

Personally known ✓ or Produced identification ___ (type of identification _____________)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v. Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.
_______________________/

AFFIDAVIT OF PHILIP CHRISTIE

STATE OF FLORIDA
COUNTY OF SUWANNEE

BEFORE ME, the undersigned authority, personally appeared **PHILIP CHRISTIE**, who first after being duly sworn says:

1. My name is Philip Christie and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

2. I am a Correctional Officer employed by the Florida Department of Corrections, and currently work at Suwannee Correctional Institution. During the time relevant to the complaint, I worked at Union Correctional Institution.

3. On October 14, 2008, I was assigned during the administrative shift, which at that time ran from 7 a.m. to 4 p.m., to work at O-dorm at Union CI. That morning, I was assisting in pulling inmates from their cells to be escorted to Mental Health Group and other callouts. At approximately 7:40 a.m., Officer Harris and I had just returned to the second floor from the downstairs of O-dorm, when Officers Kelly and Nash approached with inmate York and asked us to take York downstairs while they continued pulling inmates out of their cells. Before Officer Harris and I could even take over the escort, inmate York said, "Fuck you white boy" to Officer Harris and then attempted to head butt him. I pinned York against the upstairs conference room door and ordered him to cease his assaultive behavior. York refused and continued to struggle. York shouted, "I will kill all you fucking crackers!" Officer Harris then assisted me in holding York against the door. York continued to refuse orders to cease his resistance and again began twisting his upper body in an attempt to break our holds.

4. At this time, I attempted to grasp York's left hand, which was handcuffed in front. My hand slipped off of York's left hand. due to an unknown slippery substance present on his skin. The slippery substance was present up to York's upper forearms and was not sweat. As I

EXHIBIT (J)



was unable to maintain my hold on York's left hand, I instead grasped York's left shoulder. York continued to resist by twisting his body, attempting to pull away from myself and Officer Harris.

5.     York then attempted to head butt Officer Harris a second time. Officer Harris and I forced York to the quarterdeck floor, face down, in order to prevent further assault. York refused my order to cease his disruptive behavior. York continued to struggle and resist by twisting his upper body. Once York became compliant and was assisted to his feet, he again started resisting and twisting his body and began shouting, "Fuck y'all!" Officer Harris and I again forced York face down on the floor. Once York ceased his disruptive behavior, Officer Harris and I assisted York to his feet again.

6.     Because York appeared compliant, I ordered York to walk down the stairs. York started forward as if to comply but suddenly snatched away and attempted to head butt Officer Harris a third time. I grasped York's upper left arm, but he snatched away again, apparently lost his balance and fell down the stairs, rolling to a stop on the top stairwell landing. York's sudden movements caused Officer Harris to lose his balance on the stairs as well, although he was able to brace himself against the wall directly opposite the stairs with his arms. I also lost my balance but was able to regain my balance by grabbing onto the upper rail. I then proceeded down to the first landing. Inmate York was positioned against the wall opposite the first set of stairs down to the landing and his head and part of his upper body were slightly down the next flight of stairs to the second landing below. Officer Harris and I then went partway down the second set of stairs and brought York to his feet on the first landing. The detail about Officer Harris and I losing our balance on the stairs is not in my incident report. At the time I wrote the report, the fact that Officer Harris and I also almost fell down to the landing did not seem important enough to be included in my report as I was more focused on documenting York's actions, the use of force, and our struggle to get him to a secure location.

7.     While still on the top landing, York refused orders to walk down the rest of the stairs and stated, "Y'all are gonna have to kill me." York again tried to break free by twisting his upper body. Officer Harris and I forced York face down on the stairwell landing in order to regain control of him and prevent further assault. Once York finally became compliant, Officer Harris and I assisted him to his feet and escorted him to the bottom of the stairs. Once at the bottom of the stairs, I released my hold on inmate York. Officer Harris then escorted York to the O-dorm first-floor holding cell, placed York on the holding cell bench, and exited the holding cell. No further force was used.

8.     I have never threatened or retaliated against York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick, hit, or punch York, nor have I ever hit him with my radio. I also did not observe any other staff members hit, punch, kick, or otherwise assault York, nor did I or anyone else force York inside the conference room during this incident. If I had observed any such actions, I would have reported it to the proper authorities. My actions in grasping York, holding him against the conference room door, and forcing him face down on the floor were necessary to prevent further assault on Officer Harris and to stop his continued aggressive and disorderly actions against me, Officer Harris, and the other inmates or officers who may have been present.

I used only the minimal amount of force necessary to control York's behavior.

9. York presented a serious security threat when he attempted to head butt Officer Harris and continuously refused orders to cease his assaultive and disruptive behavior. In my experience, restraints do not disable an inmate from inflicting harm on another officer or inmate. Even an inmate in hand restraints can strike with their head or body, kick, bite, spit, or grab with their hands. Leg irons do not prevent an inmate from kicking or striking an officer. It was necessary to force York to the quarterdeck and stairwell landing floor to gain control over him, to prevent further assault, and to maintain the safety and security of the unit. Taking an inmate to the floor facedown, rather than on his back or side, gives the officer greater control over the inmate and minimizes the potential for further assault by the inmate. An inmate on his back can still strike, bite, spit on or otherwise assault the officers involved in a use of force.

10. In this case, there was no need for additional officers to become involved in the use of force. The majority of the incident took place in the stairwell, which is narrow and measures approximately 3½ to 4 feet wide. The stairs are closed off by a wall on one side and there is an open railing that looks over the first floor on the left side. It is just wide enough for one officer to maneuver the stairs alongside an inmate. Any other officers would have to be in front or behind the inmate. Due to the size of the area, having additional officers present could create a serious risk of injury, especially if the inmate tries to push an officer over the railing.

11. In addition, the surface of the stairs in O-dorm where this incident occurred is coated with a non-skid material. It is rough to the touch, similar to sand paper, and likely accounted for many of York's injuries as he fell down the stairs and came to a stop face down on his stomach, and was also forced to the stairwell landing floor, face down, due to his continued attempts to break my and Officer Harris' hold on him.

12. During this incident, I discovered that York had an unknown slippery substance on his skin, which made it very difficult for me and Officer Harris to maintain our hold on him. A cup of butter was later found in York's cell. In my experience as a correctional officer, it has become common over the last several years for inmates to use butter or other oily, slippery substances on their skin to help them slip out of handcuffs or to easily snatch away from an officer's hold. This is considered a serious security threat. It is indicative of the inmate planning to get away from an officer's escort or to somehow manipulate his restraints, where he can then pose a danger to other inmates and staff. Any time it is evident that an inmate may be planning to manipulate his restraints it is necessary to bring the inmate into compliance as soon as possible

and then move the inmate to a secure location to eliminate the security risk to the institution.

FURTHER AFFIANT SAYETH NAUGHT.

PHILIP CHRISTIE
Affiant

Sworn to and subscribed before me this 17 day of August 2011.

(Signature of Notary Public, State of Florida)

ROBIN RAE WILLIAMS
MY COMMISSION # DD948359
EXPIRES: January 23, 2014
Bonded Thru Budget Notary Services

Print, type of stamp commissioned name of notary public

Personally known ___ or Produced identification ✓ (type of identification FL DL Employee ID)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT D. YORK,

Plaintiff,

v. Case No. 3:10-CV-920-J-32TEM

FELICIA D. CHESTNUT, et al.,

Defendants.
______________________________/

AFFIDAVIT OF JOSHUA HARRIS

STATE OF FLORIDA
COUNTY OF UNION

BEFORE ME, the undersigned authority, personally appeared JOSHUA HARRIS, who first after being duly sworn says:

1. My name is Joshua Harris and I am competent to testify to the facts stated in this affidavit. I have personal knowledge of these facts.

2. I am a Correctional Officer employed by the Florida Department of Corrections, and currently work at Union Correctional Institution.

3. On October 14, 2008, I was assigned during administrative shift, which at that time ran from 7 a.m. to 4 p.m., to work at O-dorm at Union CI. That morning, I was assisting in pulling inmates from their cells to be escorted to Mental Health Group and other callouts. At approximately 7:40 a.m., Officer Christie and I had just returned to the second floor from the downstairs of O-dorm. Officers Kelly and Nash approached with inmate York and while I don't recall the details, Officer Christie and I assumed responsibility for the escort. Before Officer Christie and I could even take over the escort, inmate York began yelling at us. I no longer independently recall what York was yelling; however, I believe it is documented in some of the incident reports. Shortly after York began yelling, he suddenly lunged and attempted to head butt me. Officer Christie quickly pinned York against the upstairs conference room door and ordered him to cease his assaultive behavior. York refused and continued to shout and struggle. I then assisted Officer Christie in holding York against the door. York continued to refuse orders to cease his resistance and again began twisting his upper body in an attempt to break our holds.

4. York then attempted to head butt me again. Officer Christie and I forced York to the quarterdeck floor, face down, in order to prevent further assault. Once York became compliant and was assisted to his feet, he again started resisting and twisting his body and began

EXHIBIT (K)

shouting. Officer Christie and I again forced York face down on the floor. Once York ceased his disruptive behavior, Officer Christie and I assisted York to his feet again.

5.    York was directed to start down the steps. York started down the stairwell and suddenly, York snatched away from us and fell down the stairs, rolling to a stop on the top stairwell landing. York's snatching away also caused me to lose my balance on the stairs. I missed a few steps but was able to catch myself on the opposite wall with both of my arms extended out in front of me. By the time I regained my balance, Officer Christie had reached the first landing. Inmate York was positioned against the wall opposite the first set of stairs down to the landing and his head and part of his upper body were slightly down the next flight of stairs to the second landing below. Officer Christie and I then went partway down the second set of stairs and brought York to his feet on the first landing. York then said, "Ya'll are gonna have to kill me," and again tried to break free by twisting his upper body. Officer Christie and I forced York face down on the stairwell landing in order to prevent further assault. Once York became compliant, we once again assisted York to his feet and Officer Christie and I escorted him to the bottom of the stairs. Officer Christie released his hold and I then escorted York to the O-Dorm first-floor holding cell, placed York on the holding cell bench, released my hold and exited the holding cell. No other force was used. The detail about losing my balance on the stairs is not in my incident report. At the time I wrote the report, the fact that I also almost fell down to the landing did not seem important enough to be included in my report as I was more focused on documenting York's actions, the use of force, and our struggle to get him to a secure location.

6.    I have not retaliated against or threatened York for any reason. I have not confiscated or destroyed any of York's personal records related to this incident or otherwise. At no time did I kick or punch York, nor did I hit him with my radio. I did not observe any other staff hit, punch, kick or otherwise assault York, nor did I observe anyone force him inside the conference room. If I had observed such actions I would have reported them to the appropriate authorities. My actions in grasping York, holding him against the conference room door, and forcing him face down on the floor were necessary to prevent him from attempting to head butt me again and to end his disruptive and aggressive actions against me, Officer Christie, and any other staff or inmates who may have been present. I used only the minimal amount of force necessary to end York's behavior.

7.    York presented a serious security threat when he attempted to head butt me and refused all orders to cease his assaultive behavior. In my experience in corrections, even inmates who are restrained at the hands can inflict harm by head or body strikes, kicking or grabbing with their hands. Leg irons also do not prevent an inmate from kicking or striking an officer. It was necessary to force York to the floor to gain control of the situation, to prevent further assault, and to maintain the safety and security of the unit. Taking an inmate to the floor face down, rather than on his back or side, allows the officer to have greater control over the inmate and also minimizes the risk of further assault by the inmate. On his back, an inmate can still strike, bite, spit on or otherwise assault the officers involved in a use of force.

8.    There was no need for additional officers to be involved in the use of force. The stairwell where this incident occurred is approximately 3½ to 4 feet wide. It is closed off on one side and there is a railing open that looks over the first floor on the left side. There is just enough

room for one officer to go down the stairs alongside the inmate and any other officers would have to be in front or behind the inmate. Due to the size of the area where the use of force occurred, having additional officers present could create a serious risk of significant injury, should the inmate attempt to throw an officer over the railing.

9. In addition, during this incident it was discovered that York had an unknown slippery substance on his skin, which made it very difficult for Officer Christie and I to maintain our hold on him. A cup of butter was later found in York's cell. In my experience, it has become common over the last several years for inmates to use butter, ointment, or other oily substances to try to slip out of handcuffs or to easily snatch away from an officer's grasp. This presents a security threat and may be indicative of the inmate planning to get away from an officer's escort, where he can then pose a threat to other inmates or staff.

10. Since this incident, on December 14, 2009, inmate York successfully manipulated his left hand out of hand restraints, while cuffed in the back, and then manipulated his right hand to the front with the right handcuff, waist chain and black box still secured. York then stabbed inmate Willie Lester (DC# S05004) three times in the chest. (Attachment 1) Any time it is evident that an inmate may be planning to manipulate his restraints it presents a serious security threat to the institution, to staff and to other inmates. Force is necessary to bring the inmate into compliance and to then move the inmate to a secure location.

FURTHER AFFIANT SAYETH NAUGHT.

JOSHUA HARRIS
Affiant

Sworn to and subscribed before me this 17 day of August 2011.

(Signature of Notary Public, State of Florida)

Print, type of stamp commissioned name of notary public

Personally known ✓ or Produced identification ___ (type of identification ______________)

NOTARY PUBLIC STATE OF FLORIDA
LINDA L. CLANCE
MY COMMISSION # EE 065551
EXPIRES: February 22, 2015
Bonded Thru Budget Notary Services



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

RECEIVED
DEPARTMENT OF CORRECTIONS
APR 29 2009
BUREAU OF
STATE INVESTIGATIONS

**Case Number:** 08-28350

**Inspector General Case #:** 08-28350 **Facility:** Union Correctional Institution

**Classification of Incident:** Excessive Force **Field Office/Region:** Gainesville / Region 2

**Incident Date:** 10/14/08 **Time:** 7:40 AM **Inspector:** Kevin W. Snow

**Date of Report:** 04/20/09 **Case Type:** C

**Check all that apply:**

- [x] **Confidential Medical Information**
- [ ] **Prison Rape Elimination Act *(PREA)* Number (if applicable)**
- [ ] **Principal(s) Exhibits Attached**
- [ ] **Department of Corrections presented to State Attorney** ☐ **Declined** ☐ **Accepted**
- [x] **Use of Force *(UOF)* Number** 2008-213-0333
- [ ] **Complaint of Discrimination**
- [ ] **Addendum**
- [x] **Wing Video Camera(s) Present in the Area of Incident** ☐ **YES** ☐ **NO**

## SUMMARY OF ALLEGATIONS:

Inmate Herbert York alleged Captain Felicia Chestnut, Sergeant Jon Jenkins, Officer Jonathan Nash, Officer Phillip Christie, Officer Jesse Kelly, and Officer Joshua Harris used excessive force on him on October 14, 2008.

## SUMMARY OF DISPOSITION/JUSTIFICATION FOR DOWNGRADE/EXONERATION:

- The allegation that Captain Chestnut, Sergeant Jenkins, Officer Nash, Officer Christie, Officer Kelly, and Officer Harris used excessive force on Inmate Herbert York on October 14, 2008, is unsubstantiated. The fixed-wing video was not available for the area where the use of force occurred to support or refute Inmate York's allegation, although Inmate York had injuries *(small scratches to the right ankle and right wrist, cut and swelling to the lip, swollen nose, right eye swollen with a superficial laceration on the eyebrow, hematoma to the forehead, scratch and a laceration requiring three sutures to the top of the head, superficial laceration to the back of the head two to three inches long, and severe swelling and cut to the left eyebrow requiring three sutures)* that are consistent with the allegation but they are also consistent with the type and amount of force used as reported in the Report of Force Used submitted by Officers Christie and Nash. Inmate York gave differing accounts of who used force on him and the type and amount of force used on him in his submitted Witness Statement for the Report of Force Used investigation and in his sworn, recorded interview. All subjects and witnesses denied that excessive force was used on Inmate York.

EXHIBIT (L)



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

| | Name | Title / DC # | D.O.B. | Employee ID # |
|---|---|---|---|---|
| **Complainant:** | York, Herbert D. | Inmate #B02769 | [redacted] | |
| **Victim:** | York, Herbert D. | Inmate #B02769 | [redacted] | |
| **Witness(es):** | Harper, Bennie D. | Sergeant | [redacted] | 8829 |
| | Olive, Joshua J. | Correctional Officer | [redacted] | 15804 |
| | Cavanagh, Keith P. | Correctional Officer | [redacted] | 28615 |
| | Robinson, Deandra | Correctional Officer | [redacted] | 47476 |
| | Zwicker, David B | Correctional Officer | [redacted] | 24062 |
| **Subject(s):** | Chestnut, Felicia D. | Captain | [redacted] | 3615 |
| | Jenkins, Jon R. | Sergeant | [redacted] | 10576 |
| | Harris, Joshua R. | Correctional Officer | [redacted] | 26132 |
| | Christie, Philip H. | Correctional Officer | [redacted] | 24921 |
| | Nash, Jonathan D. | Correctional Officer | [redacted] | 27052 |
| | Kelly, Jesse R. | Correctional Officer | [redacted] | 26132 |

**Arrest:** ☐ **Employee** ☐ **Inmate** ☐ **Other**
**Charges:**

☐ **Felony** ☐ **Misdemeanor**
**Date of Arrest:**

☐ **Guilty** ☐ **Addendum Pending**
☐ **Not Guilty**
☐ **Nolo Contendere**
☐ **P.T.I.**
☐ **Other (explanation):**
**Date Reported:**

**Sentence of Court / Agreement:**

**Administrative Violation(s):** See Summary of Disposition.

**Evidence:** ☐ **Weapon** ☐ **Drugs** ☐ **Other** **Describe:** Report of Force Used, incident reports, medical documents, sworn affidavits, photo, and sworn, recorded interviews.
**Other Agency Case Number:**

**FINDINGS:**

On October 14, 2008, while on handheld video in O-Dormitory following a use of force *(2008-213-0333)*, Inmate York made allegations that excessive force was used on him. This information was reported in the Management Information Notification System *(MINS)* and assigned to Inspector Kevin Snow as IG Case 08-28350. Also during this incident a MINS report was entered for other assault because Inmate York tried to assault Officer Harris by head-butting him. This was assigned IG Case 08-28468 and was referred back to management.

In a Report of Force Used submitted on October 14, 2008, Officer Philip Christie indicated the following:



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

At 7:40 AM on Tuesday October 14, 2008, while assigned as Administrative Officer in the Southeast Unit he was assisting in removing inmates from their cells for Mental Health group when he overheard Inmate York state to Officer Harris, "Fuck you white boy," and attempt to head-butt him *(Harris)*. Force became necessary to prevent assault. He said he grasped Inmate York by the upper left shoulder from the side with both hands and forced him face first against the upstairs conference room door while ordering him to cease his disorderly behavior, to no avail. Inmate York began to struggle and shouted, "I will kill all you fucking crackers!" He again ordered Inmate York to cease his behavior and stop resisting and he refused to comply. Inmate York continued to struggle by twisting his upper body in an attempt to break his hold. Officer Harris then provided assistance. He said that while maintaining his hold of Inmate York with his right hand, he released his hold with his left and attempted to grasp Inmate York's left hand which was cuffed in front. As he grabbed Inmate York's left hand, his *(Christie's)* left hand slipped off due to an unknown slippery substance on the inmate's hand. He re-grasped Inmate York's upper left shoulder with his left hand. Inmate York was continuing to resist by twisting and attempting to pull away from his and Officer Harris' grasps. Inmate York attempted to head-butt Officer Harris a second time. While maintaining his hold, he and Officer Harris forced Inmate York to the quarterdeck floor, face down. Inmate York was ordered to cease his behavior and refused to comply by continuing to twist his upper body in an attempt to break their holds. Inmate York was ordered to cease his behavior again and complied. He and Officer Harris maintained their holds and assisted Inmate York to his feet. Inmate York began resisting by twisting his upper body in an attempt to break their holds and began shouting, "Fuck y'all." He and Officer Harris maintained their holds on Inmate York and forced him to the floor face first. Inmate York was ordered to cease his behavior and complied with the order. [He and Officer Harris maintained their holds and assisted Inmate York to his feet and ordered him to walk downstairs] Inmate York took one step forward as if to comply with the order and snatched away from him and lunged at Officer Harris to try and head-butt him again. He re-grasped Inmate York by the upper left arm with his right hand. Inmate York snatched away from him and broke his and Officer Harris' grasps, fell down the stairs, and came to a stop on the top stairwell landing. He and Officer Harris went down the stairs and observed Inmate York lying on his stomach. Inmate York rolled onto his right side and attempted to sit up. He grasped Inmate Harris by the upper left shoulder with his right hand and the shirt collar with his left hand and assisted him to his feet with the assistance of Officer Harris. [Inmate York was ordered to walk down the stairs and refused stating, "Y'all are gonna have to kill me," and began twisting his upper body attempting to break his and Officer Harris' holds. While maintaining his hold, he and Office Harris forced Inmate York face down on the landing of the stairwell] Inmate York was ordered to cease his behavior and complied. While maintaining his hold, and with the assistance of Officer Harris, Inmate York was helped to his feet and escorted down the stairs. He released his hold at the bottom of the stairs and used no further force. **(Exhibit A16)**

In a Report of Force Used Staff Supplement submitted on October 14, 2008, Officer Joshua Harris indicated the following:

He grasped Inmate York's upper right shoulder from the side with both hands and assisted Officer Christie in holding Inmate York against the conference room door. Inmate York refused all orders to





Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

cease resisting and continued to twist his upper body in an attempt to break his and Officer Christie's holds. Inmate York then attempted to head-butt him. With the assistance of Officer Christie and while maintaining their holds, they forced Inmate York to the quarterdeck floor, face down. Once Inmate York ceased resisting that he and Officer Christie assisted him to his feet. Inmate York began resisting again by twisting his upper body in an attempt to break his and Officer Christie's holds. While maintaining his hold, and with the assistance of Officer Christie, they again forced Inmate York to the floor, face first. [After Inmate York ceased resisting, he and Officer Christie, while maintaining their holds, assisted Inmate York to his feet. Inmate York snatched away from him and Officer Christie and York fell down the stairs and rolled to a stop on the top stairwell landing.] He and Officer Christie went down the stairs. He grasped Inmate York's upper right shoulder and, with the assistance of Officer Christie, assisted Inmate York to his feet. Inmate York then stated, "Y'all are gonna have to kill me," and began twisting his upper body in an attempt to break his and Officer Christie's hold. While he and Officer Christie maintained their holds they forced Inmate York to the stairwell landing face down. When Inmate York became compliant, he and Officer Christie escorted him to the bottom of the stairs. Once there, Officer Christie released his grasp on Inmate York. He *(Harris)* escorted Inmate York into the holding cell and placed him on the bench. He released his hold and exited the holding cell door.
**(Exhibit A17)**

The handheld video evidence for Report of Force Used 2008-213-033 was reviewed. The fixed-wing video was not reviewed due to this incident taking place on the upstairs quarterdeck and in the stairwell between the bottom and top floors of O-Dormitory and neither area has fixed-wing video coverage. In the handheld video, Inmate York is viewed at the window of the holding cell with blood on his face when the video first starts. Lieutenant Chestnut conducts a lead-in statement and Inmate York says that he was "jumped on." Inmate York is very loud and agitated and refuses numerous orders to sit down and be calm so that Medical can assess him. Inmate York is then ordered to quit messing with his hand restraints. The nurse comes in and assesses Inmate York and says that he needs to be seen by a doctor. He says that Officers Christie and Nash jumped on him in the holding cell. The right side of his face appears swollen when viewed. Inmate York says that he was "jumped" because of previous lawsuits that he has filed in court. Inmate York then refuses to Lieutenant Chestnut to go to the Urgent Care Area for further medical treatment. The nurse returns and tells him he needs to go and he refuses to her and Lieutenant Chestnut a second time. Medical is contacted and Inmate York is told that the doctor has authorized force to get him medical care and he finally complies with the order. He is escorted to the Urgent Care Area where he is assessed by three nurses and the doctor. Inmate York appears to be receiving sutures to the facial area. There is a video change and afterwards Inmate York is told that he is going to be housed in the upstairs hospital for twenty-four hour observation. Inmate York is escorted upstairs and placed in his new housing assignment without incident. Lieutenant Chestnut conducts a lead-out statement and the video concludes. In the Emergency Room Record and Diagram of Injury completed on October 14, 2008, Inmate York was noted with the following injuries: small scratches to the right ankle and right wrist, cut and swelling to the lip, swollen nose, right eye swollen with a superficial laceration on the eyebrow, hematoma to the forehead, scratch and a laceration requiring three sutures to the top of the head, superficial laceration to the back of the head two to three inches long, and severe swelling and cut to the left eyebrow requiring three sutures. Inmate York submitted a Witness Statement during the investigation of this use of force where he alleged that he had excessive force used on him. He said he was restrained and brought off of the wing by



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

Officers Nash and Kelly. He said once out of camera view, Officers Christie, Nash and Kelly got in his face and said that he liked to write up civil cases on Lieutenant Chestnut. He said they threw open the door where the Transitional Care call-outs take place and Officer Christie hit him in the head with his right hand, which had a radio in it. He said that Officer Nash then kicked him to the floor and he was hit with radios by Sergeant Jenkins, Officer Nash, and Officer Christie until he blacked out. He said that Sergeant Jenkins then kicked him in the forehead. He does not know what else was done to him after he blacked out. Also included with the use of force was a picture of a substance that was identified as butter that was found in Inmate York's cell during a cell search that was conducted after the use of force. **(Exhibits A1-A4 and B1)**

In a sworn, recorded interview taken on November 19, 2008, Inmate Herbert York indicated the following:

> Officers Nash and Kelly came to his cell restrained him and escorted him off of the wing for a Psychology call-out. When he got in front of the conference room upstairs, Officer Christie opened the door, grabbed him by his collar and threw him into the wall of the room. He was then pushed to the floor where he was hit in the head by radios and punches. Officers Kelly, Christie, and Nash were the officers hitting him. He was beaten for five minutes with the blows too numerous to count. Lieutenant Chestnut came in and kicked him in the forehead. He doesn't remember anything else because he was knocked out. When he woke up he was taken down the stairs and seen by Medical. The excessive force happened because he had filed a lawsuit against staff members and because he filed a Formal Grievance alleging that the staff members in the dorm were going to set him up to get beaten. Inmate York denied that he tried to head-butt Officer Harris or that he had placed some type of a lubricant on his body. He then changed his story and said that he did put grease on his hair, face, and skin. Inmate York said that Officer Robinson witnessed this excessive force. **(Exhibit B2)**

In a sworn, written Affidavit submitted on March 17, 2009 and in an incident report submitted on October 14, 2008, Sergeant Bennie Harper indicated the following:

> On October 14, 2008, he was assigned as the Administrative Sergeant in O-Dormitory. He was instructed by Lieutenant Chestnut to assist in the escort of Inmate York to the Urgent Care Area for medical treatment and a Post-Use of Force Physical. He did not witness any force during the use of force. **(Exhibits A5-A6)**

In a sworn, written Affidavit submitted on March 17, 2009 and in an incident report submitted on October 14, 2008, Officer Keith Cavanagh indicated the following:

> He escorted Inmate York from the O-Dormitory holding cell to the Urgent Care Area. He did not witness any force used on Inmate York. **(Exhibits A7-A8)**



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

In a sworn, written Affidavit submitted on March 17, 2009 and in an incident report submitted on October 14, 2008, Officer Joshua Olive indicated the following:

> On October 14, 2008, while assigned to O-Dormitory he did not witness any force used on Inmate York. He escorted Inmate York from the downstairs holding cell in O-Dormitory to the Urgent Care Area and throughout the remainder of the incident. **(Exhibits A9-A10)**

In sworn, recorded interviews taken on March 17 and April 8, 2009 and in an incident report submitted on October 14, 2008, Officer Jesse Kelly indicated the following:

> He came off of the wing, where he had been assisting in pulling inmates for call-outs, and heard a noise and observed Officers Christie and Harris struggling with Inmate York. He saw Inmate York try to head-butt Officer Harris. Inmate York was forced to the floor where he struggled for a few moments. Inmate York stopped and was helped to his feet. Inmate York started struggling again and was forced back to the floor. Inmate York stopped resisting and was helped back to his feet. [Inmate York was told to go down the stairs] Inmate York took a step forward and snatched away from Officers Harris and Christie and lunged at Officer Harris. Officer Christie grabbed him and he snatched away falling down the stairs to the landing between the first and second floors. Officers Harris and Christie went down the stairs and grabbed Inmate York to escort him to the holding cell. Inmate York began struggling again and was forced back to the floor face first. When Inmate York quit struggling he was escorted to the holding cell. He denied that he used any force on Inmate York or saw any excessive force used on Inmate York. **(Exhibits A11 and B2)**

In a sworn, recorded interview taken on March 17, 2009 and in an incident report submitted on October 14, 2008, Officer David Zwicker indicated the following:

> He witnessed Officers Christie and Harris forcefully escorting Inmate York down the stairs from the landing between the stairs to the bottom floor. Officer Christie released his grasp and Officer Harris maintained his until Inmate York was secured in the holding cell. He said that he told to get the video camera and start recording Inmate York. He denied that any excessive force was used on Inmate York. **(Exhibits A12 and B2)**

In a sworn, recorded interview taken on March 18, 2009 and in an incident report submitted on October 14, 2008, Officer Deandra Robinson indicated the following:

> [She was working in the top floor control room of O-Dormitory when this use of force occurred. Officers Christie and Harris were escorting Inmate York off of Wing Two] Inmate York was being very verbal but she could not make out what he was saying. She saw Inmate York lunge toward Officer



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

Harris. Officer Robinson said Inmate York was forced against the door to the conference room. He *(York)* continued to struggle and was placed on the floor with minimal force. Inmate York ceased and then got up to continue with the escort. He became belligerent, then lunged again towards Officer Harris and was placed on the floor. Inmate York got up and the escort continued to the stairs. Inmate York started struggling with Officers Harris and Christie again and fell down the stairs. She lost her view at this point. Officer Robinson denied that the force took place in the conference room as alleged *(by York)* or that any excessive force was used on Inmate York. **(Exhibits A13 and B2)**

In a sworn, recorded interview taken on April 8, 2009 and in the OIC Comments Section of the incident report submitted by Officer Philip Christie on October 14, 2008, Captain Felicia Chestnut indicated the following:

She did not witness any force during this incident and was summoned to the incident as the OIC. She assured Inmate York was initially seen by Medical in the dorm and she was present during his escort to the Urgent Care Area for sutures and subsequent housing in the infirmary for observation. Captain Chestnut denied that she witnessed any force used on Inmate York. She denied she kicked Inmate York in the head and further added that Inmate York alleged in his Witness Statement that Sergeant Jenkins was the person that kicked him in the head, not she. **(Exhibits A14 and B2)**

In a sworn, recorded interview taken on April 8, 2009, Sergeant John Jenkins indicated the following:

He did not witness force or use any force on Inmate York. He was in the downstairs bathroom when this use of force occurred. He was not aware that force had been used on Inmate York until after he came out of the bathroom. He denied kicking Inmate York in the head. **(Exhibit B2)**

In a sworn, recorded interview taken on April 8, 2009 and in an Incident Report submitted on October 14, 2008, Officer Jonathan Nash indicated the following:

He helped restrain Inmate York and escorted him off of the wing to attend a Mental Health group. When he exited the wing, he saw Inmate York try to head-butt Officer Harris. He observed Officers Harris and Christie force Inmate York to the floor, face first. Inmate York continued to resist for several moments. When Inmate York ceased resisting Officers Christie and Harris assisted him to his feet and Inmate York began resisting again by twisting and attempting to pull away from their grasps. Officers Harris and Christie placed Inmate York face down on the floor again and held him there until he ceased resisting. Inmate York was then escorted towards the stairs, but pulled away from their grasps and fell down the stairs to a landing between the top and bottom floors. Inmate York had some sort of slippery substance on his body that was later determined to be butter. Officer Nash said that Officer Harris and Christie went to Inmate York and attempted to escort him the rest of the way down the stairs but he starting resisting again and Officers Harris and Christie placed him on the landing of the stairs, face



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

down. Inmate York was escorted to the holding cell when he ceased resisting. Officer Nash denied using any force on Inmate York or that any excessive force was used on Inmate York by Officers Christie and Harris. **(Exhibits A15 and B2)**

In a sworn, recorded interview taken on April 14, 2009 and in a Report of Force Used submitted on October 14, 2008, Officer Philip Christie indicated the following:

He was helping escort inmates to their mental health groups. Inmate York came off of the wing and shouted something that he does not remember and then tried to head-butt Officer Harris. He grabbed Inmate York and forced him face first to the closed door of the upstairs conference room. [Officer Harris came over and grabbed Inmate Harris on the other side of his body. Inmate York was resisting them. He tried to reposition his hold on Inmate York, but Inmate York had some sort of slippery substance on his arms and wrist was able to pull away.] Inmate York then attempted to head-butt Officer Harris again. Officer Christie said he and Officer Harris then forced Inmate York to the floor face down and held him there for several moments until he ceased resisting. He and Officer Harris lifted Inmate York to his feet and he began shouting again and trying to pull away from their grasps, so he and Officer Harris forced him to the floor face first, and held him until he ceased struggling. [He and Officer Harris lifted Inmate York to his feet and told him to go down the stairs.] Inmate York pulled away from their grasps and attempted to head-butt Officer Harris again. He grabbed one of Inmate York's arms and Inmate York snatched away and fell down the stairs to the landing between the first and second floors. He and Officer Harris went down the stairs and assisted Inmate York to his feet. Inmate York again started resisting them, so he was forced to the floor face first and held there until he ceased resisting. Inmate York was then escorted the rest of the way down the stairs. He released his grasp and Officer Harris placed him in the holding cell. Officer Christie denied all the allegations made by Inmate York and denied that force was used on him by anyone other than himself and Officer Harris.

**(Exhibits A16 and B2)**

In a sworn, recorded interview taken on April 14, 2009 and in a Report of Force Used Staff Supplement submitted on October 14, 2008, Officer Joshua Harris indicated the following:

[Inmate York was being brought off of Wing Two to go to Mental Health group as he was going back to Wing Two to continue pulling call-outs.] When Inmate York came off of the wing, he yelled something and then attempted to head-butt him. He took a step back and Officer Christie grabbed Inmate York and forced him against the conference room door. He grabbed the other side of Inmate York, who kept resisting. Inmate York was very slippery because he had something on his body that was later found to be butter. Inmate York kept trying to pull away from them and tried to head-butt him again. He and Officer Christie forced Inmate York to the floor face first until he stopped resisting. [When Inmate York ceased, he and Officer Christie helped him to his feet and told him to go to the holding cell.] Inmate York started trying to pull away from their grasps and was forced face down to the floor again where he and Officer Christie held him until he ceased resisting. Inmate York was lifted to his feet and snatched



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

away from him and attempted to head-butt him again. Inmate York pulled out of Officer Christie's grasp and fell down the stairs to the landing between the first and second floors. They went down the stairs, lifted Inmate York to his feet and Inmate York then tried to snatch away from their grasps again. Inmate York was again forced to the floor face first and held there until he ceased resisting. He and Officer Christie lifted Inmate York to his feet and escorted him down the stairs. Officer Christie released Inmate York and he *(Harris)* placed him in the holding cell. Officer Harris denied all allegations by Inmate York that any excessive force was used on Inmate York. Officer Harris further denied that force was used on Inmate York by anyone other than himself or Officer Christie.

**(Exhibits A17 and B2)**



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28171

| | | | |
|---|---|---|---|
| [signature] | **Prison Inspector** | **04/21/09** | **Date** |
| [signature] | **Inspector Supervisor** | 4/23/09 | **Date** |
| Douglas P. Stephens | **Chief Prison Inspector** | 5/18/09 | **Date** |
| | **Deputy/Inspector General** | | **Date** |



Florida Department Of Corrections
Office of the Inspector General
Report of Investigation
**Interim Inspector General Walt Murphree**

**Case Number:** 08-28350

## EXHIBIT/ATTACHMENTS SECTION

**A. EXHIBIT(s) - attached:**

1. Emergency Room Record for Inmate York dated October 14. 2008.
2. Diagram of Injury for Inmate York dated October 14, 2008.
3. Witness Statement submitted by Inmate York on October 15. 2008.
4. Picture of a substance in a small screw-top jar. identified as butter. found in Inmate York's cell in a cell search on October 14, 2008.
5. Sworn. written Affidavit submitted by Sergeant Bennie Harper on March 17. 2009.
6. Incident report submitted by Sergeant Harper on October 14. 2008.
7. Sworn. Written Affidavit submitted by Officer Keith Cavanagh on March 17. 2009.
8. Incident report submitted by Officer Keith Cavanagh on October 14. 2008.
9. Sworn. written Affidavit submitted by Officer Joshua Olive on March 17. 2009.
10. Incident report submitted by Officer Joshua Olive on October 14, 2008.
11. Incident report submitted by Officer Jessie Kelly on October 14. 2008.
12. Incident report submitted by Officer David Zwicker on October 14. 2008.
13. Incident report submitted by Officer Deandra Robinson on October 14. 2008.
14. Comments in OIC Section by Captain Felicia Chestnut in an incident report submitted by Officer Philip Christie on October 14. 2008.
15. Incident report submitted by Officer Jonathan Nash on October 14, 2008.
16. Report of Force Used submitted by Officer Philip Christie on October 14, 2008.
17. Report of Force Used Staff Supplement submitted by Officer Joshua Harris on October 14. 2008.

**B. EXHIBIT(s) - not attached:**

1. Hand-held video *(maintained by the UoF Unit)*.
2. Sworn. recorded interviews downloaded to Compact Disc.

F[illegible]DA DEPARTMENT OF CORR[illegible]ONS
OFFICE OF HEALTH SERVICES
# DIAGRAM OF INJURY

Date of occurrence 10/14/08 Time of occurrence 0745

☐ No injury identified

Description of injury Multiple injuries to head and body from scratches + cuts please refer to DC4-701

Staff Signature

Inmate Name [illegible]

DC# [illegible] Race/Sex B/M

Date of Birth

Institution [illegible]

J. AVILES, M.D.=UCI
10/14/08
0925

This form is not to be amended, revised or altered [illegible] of the Deputy Assistant Secretary of Health Services

EXHIBIT (M)

FLO[illegible]A DEPARTMENT OF CORRECT[illegible]NS
OFFICE OF HEALTH SERVICES

# DIAGRAM OF INJURY

Stitches
Abrasion
Stitches
Stitches

Date of occurrence 10/14/08 Time of occurrence ____________
Assessment done 10/16/08 1940

☐ No injury identified

Description of injury Both Eyes Black and Blue. Stitches ½ inch to (R) Eyebrow. inch Stitches to Right side of head. Back of head 1½ inch stitches. Scratch to Right EAR. I/M Refused Medical Assessment. I/M stated already seen on 10-14-08

Wright / Wright LPN
Staff Signature

I. AVILES, M.D.–UCI
AR4971861 AV01
10/20/08
1540

Inmate Name York, Herbert
DC# B02769 Race/Sex B/M
Date of Birth [redacted]
Institution UCI

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

FLORIDA DEPARTMENT OF CORRECTIONS

# Chronological Record of Health Care

Allergies: [illegible]

DATE/TIME

10-[illegible] 1600 - med [illegible] Keflex 250 po [illegible] - [illegible] check's intact, advised I/M not to get sutured area wet for 10 days - [illegible]. - [illegible] R. FUTCH, RN UNION CI

10/15/08 0640 [illegible]. Rested quietly c eyes closed. Refused [illegible] + [illegible] + meals x [illegible] + breakfast. Sutures (L) eye area + side (L) head lacerations intact [illegible] drainage. No distress noted. [illegible] BAKER, SLPN UNION CI

10/15/08 1045 (S) [illegible] (O) [illegible] (A) [illegible] trauma (P) Return to security [illegible] M.D.-UCI

10-15-08 1040 [illegible] Pro Test Counseling for HIV test [illegible] M. SMITH [illegible] UCI

10-15-08 1630 D/C to security per Dr. [illegible]. I/M AEO x3 [illegible] [illegible] Resp [illegible]. VS. B/P 130/[illegible] P 89 R 20 [illegible] J.Collins LPN

Inmate Name [illegible]
DC# [illegible] Race/Sex [illegible]
Date of Birth [redacted]
Institution [illegible]

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

EXHIBIT (N)

FLORIDA DEPARTMENT OF CORRECTIONS

# Chronological Record of Health Care

Allergies: NKA

| DATE/TIME | |
|---|---|
| 10-8-08 0950 | Seen in MH |
| | JOHN PATRICK JOHNSTON, M.D. SENIOR PHYSICIAN PSYCHIATRY |
| 10/10/08 1045 | Inc. Note. Spoke c [illegible] at 773-940-8343 she was encouraged to contact brother and encourage him to follow DC rules and attend groups which will help. [illegible] |
| 10/14/08 0925 | (S) he is fine |
| | (O) Alert, stable, OX3, Eyes PERRLA Ears TM intact; [illegible] swelling of forehead c [illegible]. Neck full ROM of motion. Lungs clear, heart [illegible] murmurs - abdomen flat no tenderness Ext - full ROM, no neurodeficit noted no bony marks noted. |
| | (A) Head Trauma. |
| | (P) 1- Housing 23° infirmary - |
| | 2- remove sutures in 10 days - MAR completed |
| | 3- Tylenol 2 tabs qid 75 days |
| | 4- [illegible] each shift |
| | 5- [illegible] 10 days |
| | 6- [illegible] |
| | 7- [illegible] |
| | [signature] J. AVILES, M.D. - UCI |

Inmate Name CLARK HERBERT

DC# [illegible] Race/Sex B/M

Date of Birth [redacted]

Institution UCI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan

This form is not to be amended, revised, or altered without approval of the Office of Health Services Administration

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

Check one: ☐ Inmate/Post-Use-of-Force Exam alleged Staff abuse

☐ Employee: ☐ Post-Use-of-Force Exam OR ☐ Injury OR ☐ Physical Altercation

☐ Visitor/Injury

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA must review this form and sign it on the next working day.

Time of occurrence: ______ Time of exam: 1730

Description of occurrence:
Refused to be seen for Alleged Staff Abuse I/m was Already seen on 10-14-08 per I/m. This writer will only note was is physically seen.

Inmate showered without soap (if post-use of chemical agent)? ☐ Yes ☐ Refused ☒ N/A

Vital Signs: Temperature REFUSED ~~Respiration~~ ~~Blood Pressure~~

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other: ______

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☐ Responding to questions verbally

☐ Other (requires description in assessment summary)

☐ C/O pain? If checked, where? ______

Assessment summary:
I/m Refuses Assessment. I/m stated on 10-14-08 He was Already seen for Alleged STAFF ABUSE. Both Eyes Black and BLUE. Eyes blacked and Red. (R) Eyebrow has stitches. Left Eyebrow Has Abrasion. Right Ear has scratches Right top part of Head has stitches. On Back Of Head is stitches. This writer not Able to fully Assess I/m due to I/m Refusing. This writer is documenting what is SEEN.

Physician notified? ☒ No ☐ Yes Name: ______ Time: ______

Treatment provided? ☒ No ☐ Yes If yes, describe:
I/m is already on wound care for stitches in back of Head and on (R) EyeBrow.

Response to Treatment:

Disposition: ☐ Population ☒ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☐ Other (explain):

Discharge Instructions and Education:

Health Care Provider's Signature and Stamp: [signature] Date/Time: 10/16/08 1930

Reviewing Physician's Signature and Stamp: [signature] J. AVILES, M.D.-UCI AR4371851 AV01 Date/Time: 10/20/08 1540

Name York, Herbert

DC# B027609 Race/Sex B/M

Date of Birth [redacted]

Institution UCI

Inmate Distribution: White—Health Record; Canary—Inspector General; Pink—Local Requirements

Employee Distribution: White—Personnel File; Canary—Employee Copy; Pink—DESTROY

DC4-701C (Revised 10/07)

This form is not to be amended, revised, or altered without approval of the Office of Health Services-Administration

EXHIBIT (O)

Incorporated by Reference in Rule 33-602 ... F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

Check one: [X] Inmate/Post-Use-of-Force Exam

[ ] Employee: [ ] Post-Use-of-Force Exam OR [ ] Injury OR [ ] Physical Altercation

[ ] Visitor/Injury

All inmates must receive a complete assessment following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA must review this form and sign it on the next working day.

Time of occurrence: 0745 Approx Time of exam: 0800

Description of occurrence: [illegible] use of force / alleging [illegible] abuse [illegible] from [illegible] I/M HAS [illegible] injuries to head. C/O pain all over. I/M Refusing to go to UCA [illegible]

Inmate showered without soap (if post-use of chemical agent)? [ ] Yes [ ] Refused [X] N/A

Vital Signs: Temperature 98.3 Pulse 98 Respiration 20 Blood Pressure 156/100

Arrived via: [X] Ambulatory [ ] Stretcher [ ] Wheelchair [ ] Other: ____

Condition on arrival (check all that apply): [ ] Alert [ ] Oriented x 4 (person, place, time, situation) [ ] Responding to questions verbally

[ ] Other (requires description in assessment summary)

[X] C/O pain? If checked, where? face, chest, eyes, nose, Back, wrist, [illegible] Back of head, lips

Assessment summary:

0840 - UCA - all areas [illegible] - T 98.6 B/P 134/88 P 96 R 20 A&O skin warm dry [illegible] all [illegible] 05 OD-swollen - [illegible] to open [illegible], [illegible] clear, eyes PERRLA, full ROM [illegible] head & neck, also full ROM 4 extremities - Abdomen unremarkable, [illegible] T/M [illegible] blood

Physician notified? [ ] No [X] Yes Name: Dr Aviles J. AVILES, M.D.–UCI AR4971861 AV01 Time: 0810

Treatment provided? [ ] No [X] Yes If yes, describe: Cleaned c H2O2 & Saline laceration top of head about 1½ inch long 3 sutures apply of 3-0 Ethilon after clean area c betadine solution & [illegible] c lidocaine 1% 2cc, also left eye brow ¾ inch 3 sutures apply after clean area, lidocaine 1cc SQ

Response to Treatment: I/M Refused Bandages to head [illegible] - 3 sutures L eyebrow, neuro check every shift x 2.

Disposition: [ ] Population [ ] Confinement [ ] Infirmary [X] Hospital [ ] Rescue [X] Other (explain):

Sent to UCA for MD Eval - remove sutures 10 days

Discharge Instructions and Education: Keflex 250mg QID x 10 days - Tylenol 2 tabs po QID ) 5 days 10A - to Inf med [illegible] 24° observation.

Health Care Provider's Signature and Stamp: [signature] S. WILSON, SLPN UNION CI Date/Time: 10/14/08 0815

Reviewing Physician's Signature and Stamp: [signature] J. AVILES, M.D.–UCI AR4971861 AV01 Date/Time: 10/14/08 0925

Name: Geek Herbert

DC#: 502769 Race/Sex: B/M

Date of Birth: ____

Institution: UCI

Inmate Distribution: White—Health Record; Canary—Inspector General; Pink—Local Requirements

Employee Distribution: White—Personnel File; Canary—Employee Copy; Pink—DESTROY

This form is not to be amended, revised, or altered without approval of the Office of Health Services Administration

DC4-701C (Revised 10/07)

FLORIDA DEPARTMENT OF CORRECTIONS
PHYSICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: UCI (October) Date: 10/15/08 Time: 1015 ☑ Inpatient ☐ Outpatient

Inmate Name: York Herbert
DC#: 802769
Dorm: R
Diagnosis: multiple head Trauma

List Allergies Here: NKA

STAT | Initial Each Order as Transcribed

Discharge to [illegible]
HIV counseling [illegible] return to O dorm

Doctor Signature/Stamp: J. AVILES, M.D.—UCI AR4971861 AVI
Date/Time:

Time Noted: 1035
Nurse Signature/Stamp: J.Collins LPN

Distribution: White Original—Pharmacy Canary—Medical Record

DC4-714B (9/05)

FLORIDA DEPARTMENT OF CORRECTIONS
PHYSICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: UCI (October) Date: 10/14/08 Time: 0925 ☑ Inpatient ☐ Outpatient

Inmate Name: YORK Herbert
DC#: B02769
Dorm: R
Diagnosis: multiple head Trauma

List Allergies Here: NKA

STAT | Initial Each Order as Transcribed

5- clean wounds daily c̄ betadine 4 days
6- remove sutures in 10 days
7- HIV test after counseling

Doctor Signature/Stamp: AVILES, M.D.—UCI AR4971861 AVI
Date/Time:

Time Noted: 1030
Nurse Signature/Stamp: J.Collins LPN

Distribution: White Original—Pharmacy Canary—Medical Record

DC4-714B (9/05)

FLORIDA DEPARTMENT OF CORRECTIONS
PHYSICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: UCI (October) Date: 10/14/08 Time: 0925 ☐ Inpatient ☑ Outpatient

Inmate Name: YORK Herbert
DC#: 802769
Dorm: R
Diagnosis: multiple Trauma of head

List Allergies Here: NKA

STAT | Initial Each Order as Transcribed

1- Keflex 250 mg PO QID 10 days
2- Tylenol [illegible] QID 3 days
3- [illegible] check each shift [illegible] days
4- [illegible]

Doctor Signature/Stamp

EXHIBIT (P)

Time Noted: 1030
Nurse Signature/Stamp: J.Collins LPN

Distribution: White Original—Pharmacy

DC4-714B (9/05)

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HERBERT D. YORK, DC#B02769
Plaintiff.

v. CASE NO: 3:10-CV-J-920-32TEM

FELICIA D. CHESTNUT, et.al.,
Defendant
______________________________/

**"MOTION TO COMPEL STATIONARY VIDEO RECORDINGS THAT WITNESSED PLAINTIFF BEING SUBJECTED TO EXCESSIVE FORCE."**

1). Pursuant to the applicable laws/color of laws, *Fed. R. Civ. Proc. 56 (F) and 37 (a),* **Brady v. Maryland,** *373 U.S. 83* and **Farmer v. Brenan,** *81 F. 3d 1444,* Plaintiff states as follows:

2). This motion is made in good faith and Plaintiff has made attempts to confer with Defendants to disclose the stationary video recording camera witnessing said Excessive Force, to no avail—where, Defendants construe to withhold said favorable evidence needed for supporting Plaintiff's motion opposing Defendants Motion for Dismissal/Summary Judgment; which is also necessary for Trial.

3). The denial of this motion will deprive Plaintiff of said favorable evidence, which will contravene Law & Justice set forth by court rules and binding precedents.

EXHIBIT (Q)

4). Wherefore, Plaintiff respectfully requests this Honorable Court to GRANT this Motion to Compel said favorable evidence any further relief.

**UNDER OATH**

Pursuant to *92.525, Florida Statutes, and 28 U.S.C. §1746* I HEREBY DECLARE under penalty of perjury that I have read the foregoing document and that the facts stated in it are true.

Date: 1 / 20 / 12 .

Respectfully submitted,

Herbert Demond York B02769

Herbert D. York, DC#B02769
Union Correctional Institution
7819 NW 228th Street
Raiford, Florida 32026

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of Plaintiff Response to defendants Motion to dismiss or in the alternative motion For Summary Judgment has been furnished by United States Mail to: Ms. Jamie M. Braun, Assistant Attorney General Office of the Attorney General, The Capitol, Suite PL-01, Tallahassee, Florida 32399-1050, and to: United States District Court 300 N. Hogan Street, Suite 9-150, Jacksonville, Florida 32202-4271 on the date of 1 / 20 /12 .

/s/ Herbert Demond York B02769

Herbert York DC# B02769
Union Correctional Institution
7819 NW 228 Street
Raiford, Florida 32026

FOR MAILING
JAN 2 0 2012
BY
UNION CORRECTIONAL INSTITUTION
RECEIVED